Opinion delivered March 20, 1886.

[No. 2069.]

GEORGE GREEN *alias* BALLY GREEN *v.* THE STATE.

1. BURGLARY.—INDICTMENT for burglary with intent to steal need not allege the value of the property intended to be stolen.
2. INDICTMENT—ELECTION.—When several counts in the same indictment are substantially for the same offense, and are introduced for the purpose of meeting the evidence as it may transpire, the State will not be required to elect on which it will rely.

APPEAL from the District Court of Denton. Tried below before the Hon. F. E. Piner.

The conviction in this case was had under an indictment which in different counts, charged, in the same transaction, a diurnal

and a nocturnal burglary, of the house of T. M. Harris, in Denton county, Texas, on the seventeenth day of July, 1885. The penalty assessed against the appellant was a term of two years in the penitentiary.

T. M. Harris was the first witness for the State. He testified that he lived in Denton county, Texas. The witness was away from home a part of the day on the seventeenth day of July, 1885. When he returned late on that evening he found the defendant and one Mart McNealey at his barn. He did not know either of the parties at that time. Defendant and McNealey told witness that they had been awaiting the witness's return to apply to him for work. Witness told them that he did not want to employ them, and they went off. The witness's barn was a building of two apartments, and was originally built for the purpose of storing grain. Witness kept his horses and wagon in the barn proper, and his saddles, harness, etc., in a small room cut off from it by a partition. On the seventeenth day of July, 1885, he had some meat hanging from the rafters in the barn proper, and a shoulder of meat lying in the small room, which he had left there for the convenience of his wife. The barn door, through which the horses and wagon were taken into the barn, usually stood open. The door leading from the barn into the small room was always kept closed and latched, and that door was closed and latched at the time that the meat was taken. Witness did not miss his meat until the second day after his interview with the defendant and McNealey at the barn. No one had the witness's consent to go into either of the rooms in the barn, nor to take any of the meat from either room. As soon as he missed the meat the witness suspected the two men—defendant and McNealey—who were at the barn hunting work on the second day before. On the Monday after the meat was taken, the witness, in company with his brother, T. H. Harris, and J. T. Rosson, went to the house of one Colehans, near which the defendant and McNealey had been camped. They there found the defendant, and witness had a conversation with him. The defendant was not under arrest, and no threat of prosecution had been uttered when the conversation transpired. Witness told the defendant that some meat had been stolen from his barn, and that he suspected him, defendant, and McNealey of taking it; that he wanted to search the defendant's camp, and that, if the defendant would not consent to the search he would procure a search warrant. Defendant hung his head down for

a minute, and then asked if witness would accept pay for the meat. Witness replied that he would. Defendant then said that he and McNealey got the meat on the night of the day on which they applied to witness for work, which was July 17, 1885; that he, defendant, mounted to the meat in the barn, cut down sixty or seventy pounds, which he handed to McNealey. He said that he then went into the small room and got the shoulder of meat and handed that to McNealey. He said that the door to the small room was closed, and that he opened it, and it was the recollection of the witness that he said the door was latched and that he unlatched it.

Cross-examined, the witness stated that he could not be positive that he latched the door when he passed from the small room the last time before the burglary, but he was sure that he closed it, as was his invariable habit, his harness, saddles and meat in use being kept in that room. The witness could not recall exactly what the defendant said about the two doors to the building, but it was his recollection that he said the barn outside door was open, and that the door leading into the little room was closed. At all events, the witness was certain that the defendant told him he pushed the door to the little room open, and went in and got the shoulder of meat. After his confession, the defendant said: "When I met you on yesterday I felt that I ought to tell you about the meat." He then paid the witness for the meat. If the defendant, in connection with his confession, said that Mart McNealey would not let him tell the witness about the meat, when he thought of doing so on the day before, the witness did not hear it. Witness did not promise the defendant not to prosecute him. Defendant said that Colehans owed him for work, and gave witness an order on Colehans for the money to pay for the meat. The witness's brother, T. H. Harris, and J. T. Rosson were present, and heard all that transpired at the conference between witness and defendant. Witness did not arrest the defendant when he found him. After defendant's confession, witness asked him where McNealey then was, and if he would go with witness to find McNealey. He agreed to go with witness to find McNealey, and told witness that McNealey had gone to McKinney. Defendant, witness, T. H. Harris and Rosson started to McKinney, and had gone about a mile when witness told defendant that he did not believe McNealey had gone to McKinney, and that he wanted defendant to tell him the truth about McNealey's whereabouts. He then told witness

that McNealy went towards Bolivar. The party then traveled towards Bolivar, and overtook McNealey in a wagon west of Bolivar. They arrested McNealey and defendant and took them to Pilot Point. On Sunday, at church, the witness saw a man who called himself Beal. He was introduced to witness by Colehans. Witness did not tell Beal that the defendant said he found the door to the small room open, when he went in and got the shoulder of meat. The witness was in his barn at about eight o'clock on the night of the burglary. The door to the small room was then closed and latched. While it was barely possible that some one of witness's family may have gone to the barn after the witness went back to the house, he felt morally certain that none of them did.

T. H. Harris testified, for the State, that he was present and heard the conversation between T. M. Harris and defendant on Monday after the burglary. The conversation took place on John Colehans's place. Witness, T. M. Harris and J. T. Rosson went to the defendant's camp for the express purpose of looking for the meat. T. M. Harris told defendant that some one had entered his barn and stolen some meat from him; that he had come to search his, defendant's, camp for the meat, if defendant had no objection, and that if he did object he would procure a search warrant for the purpose. Defendant then asked T. M. Harris if he would accept pay for the meat. Harris replied that he would. Defendant then said: "You need not search the camp; we got your meat. I met you yesterday, and felt then that I ought to tell you about it." Defendant said that he and Mart McNealey went to the barn and got the meat on the night of July 17, 1885. He said that he climbed up to the roof, cut the meat down and passed it out to McNealey; that he found the door to the small room closed and latched, and that he unlatched and opened it, and went into the small room, got the shoulder of meat and passed it out to McNealey. He said that the outside door of the barn was open. The defendant was not under arrest when he made the confession. No threats were made, nor were any promises given in order to get him to confess. He was told that the party intended either to search his camp with his consent or search it under a search warrant. Rosson was present and heard the whole of the conversation. Rosson was now a resident of the Indian Territory, but witness did not know his address. McNealey was found and arrested at a point near and northwest from Bolivar, about twenty miles distant from where

the defendant was found. Defendant went with the party to find McNealey. Defendant was arrested when the party started after McNealey. McNealey and defendant were then taken to Pilot Point and turned over to constable Glasscock. The State closed.

John Colehans testified, for the defense, that defendant and Mart McNealey camped on his place and picked cotton for him in July, 1885. Witness saw the Harris brothers, who testified in this case, near his place, on the Monday after the alleged burglary. Witness paid T. M. Harris some money which he then owed defendant. Witness did not hear any of the conversation between the defendant and T. M. Harris about the meat. He was not present when that conversation was alleged to have taken place. A man who said that his name was Beal came to witness's house afterwards, and witness went with him to see Harris. Not finding him at home, witness and Beal went to church, where they found him. Harris told Beal at the church that his barn door was open on the night of the alleged burglary.

—— McNealey, brother of Mart McNealey, charged in another indictment as a party to this offense, testified, for the defense, that he stayed with Mart McNealey and defendant at their camp on John Colehans's place, in July, 1885. Mart McNealey and defendant were away from camp on the night of July 17, 1885. Witness saw some meat in camp on the morning of the next day, but saw nothing of a shoulder of meat. Witness ate some of the meat.

The motion for new trial raised the question discussed in the opinion.

*Owsley & Walker* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. This prosecution was for burglary, and the indictment contained two counts.

1. A motion was made to quash the first count, because it did not allege the value of the property intended to be stolen. Allegation of value of property intended to be taken is not essential to the validity of an indictment for burglary. (Sullivan v. The State, 13 Texas Ct. App., 462.)

2. It is insisted that the prosecution should have been com-

pelled to elect, on motion of defendant, upon which count the conviction would be claimed.    This position is not maintainable. (Gonzales v. The State, 5 Texas Ct. App., 584; Keeler v. The State, 15 Texas Ct. App., 111; Masterson v. The State, 20 Texas Ct. App., 574.)

3.    The motion for continuance was properly overruled.    Defendant confessed his crime.    There was no error in the charge of the court.    The judgment is affirmed.

*Affirmed.*