## DAN O'HARA v. THE STATE.

### No. 181.    Decided December 15, 1909.

### Rehearing denied January 12, 1910.

**1.—Robbery—Charge of Court—Alibi.**

Where, upon trial of robbery, the defense was an alibi, and the court instructed the jury, after defining an alibi, that if the jury had a reasonable doubt from the evidence as to defendant's presence at the scene of the robbery, to acquit him, there was no error.

**2.—Same—Charge of Court—Defendant as a Witness.**

Where, upon trial for robbery, the court instructed the jury that defendant's failure to testify was not even a circumstance against him, and no presumption of guilt could be indulged in by the jury on account of such failure, and that they were not to discuss or refer to the fact of such failure of defendant to testify, there was no error. Following Anderson v. State, 53 Texas Crim. Rep., 341, and other cases.

**3.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of robbery, there was no bill of exceptions in the record to the testimony objected to, the same could not be considered.

**4.—Same—Newly Discovered Evidence—Want of Diligence.**

Where, upon motion for new trial, after a conviction of robbery, it appeared from the record that defendant had not exercised proper diligence to inform himself of said testimony before the trial; that the same was largely cumulative, and not at variance with the State's testimony, there was no error in overruling the motion.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial for robbery, the evidence was sufficient to support the conviction, the same will not be disturbed. See opinion as to the functions of a trial judge.

Appeal from the District Court of Palo Pinto. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

Vol. LVII. Crim.—37.

*W. S. Payne* and *Penix & Eberhart,* for appellant.—On question of insufficiency of evidence: Walker v. State, 14 Texas Crim. App., 609. On question of newly discovered evidence: Roy v. State, 24 Texas Crim. App., 369, 6 S. W. Rep., 186; Strickland v. State, 13 Texas Crim. App., 364; Hickman v. State, 25 S. W. Rep., 126; Bell v. State, 1 Texas Crim. App., 598; Potts v. State, 14 S. W. Rep., 456; Chumley v. State, 26 S. W. Rep., 406; Sebastian v. State, 39 S. W. Rep., 680; Estrada v. State, 29 Texas Crim. App., 169, 15 S. W. Rep., 644.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged by indictment filed in the District Court of Palo Pinto County, on March 23 of this year, with making an assault upon and taking by violence from one J. B. Richardson $35. He was put upon his trial on the 26th day of the same month, and as a result thereof found guilty, and his punishment assessed at confinement in the penitentiary for a period of five years.

No application for a continuance was made, but when the case was called both the State and appellant announced ready for trial. The evidence of the State was largely adduced through the complaining witness Richardson, who testified that he was in the town of Strawn on the 19th day of March, and that about 10 o'clock that night left the saloon where the parties had been most of the evening and drove by and crossed the railroad track from sixty to seventy steps from the saloon, and that he was robbed about 100 yards from the depot. His testimony is to the effect that he had exhibited some money in having a bill or two changed during the night, and that after passing the depot, and about the distance stated above from same, he first saw an object to his left in the edge of the electric light, and that when he got close enough he recognized this person as appellant. Thereupon he testifies as follows: "He climbed up on the back of my buggy, threw his arm around my neck and covered my month with his hand, and with the other hand took from my vest pocket thirty-five dollars in money of the value of $35 by force and without my consent." He also testifies there was another person present, but this man he did not recognize. He testifies further that he was drinking somewhat, but was not drunk, and knew what was going on. Touching the place and the surroundings where the robbery occurred, he makes this statement: "This trouble occurred about 100 yards from the depot, right over in front of the depot. The light there was good enough for me to see, and it was starlight also, and I think I can see as well as anyone." The testimony further shows that within

thirty minutes from the time he first left the saloon he returned
with the statement that he had been robbed. During the night
appellant was arrested. By the deputy sheriff, Si Bradford, it was
shown that about the time Richardson left the saloon he saw appel-
lant go out of the back door of the saloon, and it was something
like thirty minutes before he saw him again. This witness also
testifies as to the location of lights, substantially, in this language:
"The place where the robbery occurred is 400 or 500 feet from the
saloon, and there are some lights around there, sufficient, I think,
to identify a man by. One of the lights—electric—is at the back
end of the saloon, upon a post fifteen or eighteen feet high, the
other lights coming from the windows back there and from a glass
door. The electric light on the pole referred to is about 250 feet
or not over 300 feet from the front of the saloon." He further
testified when he saw Richardson he seemed to be in fairly good
condition, but had been drinking some. It was also shown by the
testimony of I. B. Davidson, one of the proprietors of the saloon,
that when appellant was arrested Bradford, the deputy sheriff, took
from him $19.20 in money. Touching this matter he makes this
statement: "I think the money was handed by defendant to the
officer, instead of being taken off of him. The officer had run his
hands in defendant's pocket and took out some silver, and the de-
fendant said, 'Don't get my money,' and Bradford said to the de-
fendant that 'Money is what we are after.' Then defendant said,
'Here is ten dollars more,' and handed out the money, and also got
from his pocket twenty cents more. When the officer started to
search him he got his knife, at which defendant said something
about not to get his money, and then the officer said money is what
we are after."

Appellant introduced a considerable number of witnesses who
made a strong case of alibi. The testimony of some of these wit-
nesses does not exclude the idea that it was possible for appellant
to have committed the robbery. The testimony of many of them
does, substantially, exclude the possibility of his being present at
the scene of the robbery, and altogether the evidence makes a strong
showing on this question, and sufficient, if believed, undoubtedly
to have defeated the prosecution. A number of questions are raised
in the motion for a new trial, some of which we will discuss.

1. The principal complaint of the charge of the court is in re-
spect to the submission of the issue of alibi. On this issue the
court thus instructed the jury: "Among other defenses set up by
the defendant is what is known in legal phraseology as an alibi,
that is, that if the offense was committed as alleged, the defendant
was at another and different place from that which the same was
committed at the time of the commission thereof, and therefore was
not, and could not have been, the person who committed the crime.

"Now, if the evidence raises in your mind a reasonable doubt as to the presence of the defendant at the place where the offense was committed, if any such was committed, at the time of the commission thereof, you will give the · defendant the benefit of such doubt and acquit him."

It is complained that this charge was erroneous, and was calculated to and did prejudice the rights of appellant, and that it presented the issue negatively, and was substantially a failure on the part of the court to submit the issue to the jury. We see no error in the charge of the court. It stated, in substance, the nature of appellant's defense, and then instructed the jury that if the evidence raised a reasonable doubt in their minds as to his presence at the scene of the robbery they should acquit. What more favorable charge the court could have given in this connection it is difficult to see.

2. Complaint is also made of the following portion of the court's charge: "The law allows a defendant to testify in his own behalf, but a failure to do so is not even a circumstance against him, and no presumption of guilt can be indulged in by the jury on account of such failure on his part, and the jury will not mention, discuss or even refer to the fact that the defendant failed to testify." This charge has during this term of the court received consideration and has been adjudged to be no deprivation of any of appellant's rights. Singleton v. State, decided at the present term; Anderson v. State, 53 Texas Crim. Rep., 341; Leslie v. State, 49 S. W. Rep., 73; Fulcher v. State, 28 Texas Crim. App., 465.

3. Complaint is also made in motion for new trial that the court erred in admitting the testimony of Bradford that appellant was generally a fussy and quarrelsome man, and that he and Lee Welch were engaged in a fight in which appellant was the aggressor. ·This matter is not evidenced by bill of ·exceptions, and can not, of course, be considered.

4. A more substantial and difficult question arises on the motion, which strongly urges that appellant should have been granted a new trial on account of certain newly discovered testimony. This motion was prepared with great skill, and presents the most difficult question arising in the case. The testimony claimed to be newly discovered consisted of evidence of A. F. Jones, Joe Berkey, D. H. Smith, Barney Gulley, Mike Supina, E. Stanford, H. D. Sheppard and Geo. H. Cook. By Sheppard and Cook it was proposed to be proven that on the 20th day of March they had a conversation with one Gentry James at ·the Link saloon, in the town of Strawn, in which the said James stated that he got the money, referring to Richardson, and that he had planted it until after this thing was over and then he would dig it up. By the witnesses Jones, Berkey, Smith and Gulley it was proposed to be proven that a person could

not be identified by and from the electric light at the place of the robbery. This same matter is presented in the affidavit of Supina and Stanford, who say that by an actual test on another night corresponding very closely in conditions to the night of the robbery, they were unable to recognize anyone by the electric light or without the electric light. That on the night of the robbery, and almost immediately after Richardson was robbed, and before his return to town, that they went to the place where he was, and that he stated to them that he did not know who robbed him, but thought it was the man who fought Lee Welch, but was not certain, and so expressed himself at the time. That at this time Richardson was very drunk. The rule is well nigh universal that in order to entitle a defendant to a new trial on account of newly discovered evidence the motion must possess the following qualities: The evidence must be such as might change the result; it must go to the merits and constitute not merely a technical defense; it must be material and not merely cumulative, corroborative or collateral; it must have been discovered since the trial, and it must be such as with reasonable diligence upon the part of the defendant he could not have discovered at the former trial. Terry v. State, 3 Texas Crim. App., 236; Duval v. State, 8 Texas Crim. App., 370; White v. State, 10 Texas Crim. App., 167; Fisher v. State, 30 Texas Crim. App., 502. It is one of the basic principles of our law, as it was in the time of Saint Paul, that no citizen of a free State shall be scourged or condemned unheard. The law gives to every man his day in court. It does not, however, give him two days, or the day that may belong to someone else. Every consideration of public convenience and economy and every suggestion of self-preservation would suggest to every litigant, when charged in a court of justice, due diligence in the preparation for trial, and in preparing for his defense. The possibility or probability, under the circumstances, of Richardson identifying his assailant must and would inevitably have suggested itself to one of even the slightest intelligence. In fact, that was made an issue in this case. On this question, on the trial, Richardson testified as has been stated above. Lindsey, a witness for appellant, testified: "The night was rather dark, there being no moon; it was slightly cloudy." J. B. Cooper testified as follows: "The night was dark." There can be no question that the scene of the robbery, the location of the lights, and the state of the weather were matters known to most of the witnesses, and information concerning this could have been obtained from a large number of persons on the slightest inquiry. The testimony sought in reference to the declaration of James was unimportant, for the reason that same was not at variance with the State's theory or in contradiction of anything testified to by Richardson. His testimony was to the effect, in substance, that two persons were present when he was robbed. The statement of

James that he had the money, and when the thing had blown over he would dig it up not only was not contradictory of the State's case, but tended rather to support it. Besides, no effort was made to secure the testimony of James. The record incidentally does show he had been indicted for the same offense, but that the prosecution, presumably for want of sufficient testimony against him, had been dismissed before appellant was put on his trial. There would be some merit perhaps in the ground of the motion based on the affidavit of Supina and Stanford except for the fact that in contesting the motion the State shows that all the facts which these witnesses would have testified to were known to B. Stanford, who testified as a witness on the trial in behalf of appellant. He states in his affidavit, in substance, that he was present with Supina and his brother, E. Stanford, when they went to where Richardson was to help him look for his hat, and heard and saw everything that his brother and Supina heard and saw. The slightest diligence would have enabled appellant on inquiry from B. Stanford to have obtained information not only as to what he knew touching this matter, but who was present, so if desired their testimony could have been secured. It is no doubt true that much of this testimony claimed to be newly discovered was material, and some of it important, but it is largely cumulative, and none of it, as we believe, newly discovered or such as could not have been discovered by the exercise of ordinary care. It is true appellant was put upon his trial a short time after the indictment, but he made no application for postponement or any suggestion of unreadiness or unpreparedness to meet the issue. We think, under all the facts, the court did not abuse the discretion that the law wisely commits to his good judgment.

5. Finally, it is urged that the judgment of conviction is contrary to and unsupported by the evidence, and that there is in the record such an overwhelming weight of testimony showing alibi, that in view of the testimony concerning Richardson's condition and the improbability of a complete and reliable identification of the robber, that the court below should have, and that we ought now to set aside the finding of the jury and reverse and remand the case on this ground. We can not agree to this contention. Testimony in trials before courts is not weighed by mere avoirdupois. It might often happen that the testimony of one man, affirming the truth of a given state of facts, might by reason of his intelligence, candor and integrity outweigh the evidence of a score of men. Mere numbers do not always count. It is the office and duty of juries as triers of fact from conflicting statements to ascertain and declare the truth. When they have done so, and when such finding has received the approval of the trial court, we ought not to interfere, unless the theory of the State is so improbable or the weight

of testimony so overwhelming as to evidence unfairness or a flagrant disregard of the testimony. Again, as we have often said, much deference should be paid to the action of the trial court in matters of this sort. The trial judge is more than a mere disinterested moderator, keeping the peace and naming the time of adjournment and convening of court. Among the offices of the position is the duty of passing on motions for new trials where controverted issues of fact are the bases of the motion. The law makes it his duty, where justice demands it, to grant new trials. He sees the witnesses; he is familiar with the environments, and has information and knowledge of the situation which, far removed as we are from the scene of the trial, we can not have. It is only in cases where he has abused the discretion which the law confides to him that we can or ought to interfere. It may be in this case an injustice has been done appellant, but the issue raised was one of fact, and this fact both the jury and the trial court have held against him. We ought not to and can not interfere.

Finding no error in the record, the judgment of conviction is hereby in all things affirmed.

*Affirmed.*

[Rehearing denied January 12, 1910.—Reporter.]