## Marcellus Dougherty v. The State.

### No. 433.   Decided March 16, 1910.

Rehearing denied May 25, 1910.

**1.—Murder—Evidence—Deceased Unarmed.**

Upon trial of murder, there was no error in admitting testimony as to the fact that deceased was unarmed at the time of the homicide.

**2.—Same—Charge of Court—Murder in the First Degree—Conviction for Lower Grade of Homicide.**

Where, upon trial of murder, the defendant was found guilty of murder in the second degree, he could not complain either of the fact that the court submitted murder in the first degree, or of errors in the charge touching that degree of murder.  Following Potts v. State, 56 Texas Crim. Rep., 39.

**3.—Same—Charge of Court—Murder in the Second Degree.**

Where, upon trial of murder, the evidence showed an unlawful killing on the testimony of the State, there was no error in instructing on murder in the second degree.  Following Wheeler v. State, 54 Texas Crim. Rep., 47, and other cases.

**4.—Same—Presumption of Malice—Charge of Court.**

Where, upon trial of murder, the evidence showed circumstances from which the jury were justified that the killing was unlawful, the court did not err to instruct on murder in the second degree.

**5.—Same—Charge of Court—Defendant's Failure to Testify.**

Upon trial of murder, where the defendant did not testify, there was no error in the court's charge in admonishing the jury not to refer to this circumstance in any way, etc.  Following Anderson v. State, 53 Texas Crim. Rep., 341, and other cases.

**6.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence did not show any fact which could have reduced the homicide below the grade of murder in the second degree, there was no error in the court's failure to charge on manslaughter.  Following Potts v. State, 56 Texas Crim. Rep., 39, and other cases.

**7.—Same—Jury and Jury Law—Prejudiced Jurors—Practice in District Court.**

Where, upon appeal from a conviction of murder in the second degree, the record did not show that there was no oral testimony submitted on the issue that two of the jurors were prejudiced against the defendant, and there was no certificate of the trial judge that the affidavits to the motion for new trial was the only evidence touching this matter, the judgment of the trial court overruling the motion will not be disturbed.  Following Cabrera v. State, 56 Texas Crim. Rep., 141, and other cases.

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained the conviction, the same will not be disturbed.

Appeal from the District Court of Cameron.  Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Jas. B. Wells, A. I. Hudson* and *Brockman, Kahn & Williams*

and *T. H. McGregor,* for appellant.—On question of submitting the issue of express malice: Habel v. State, 28 Texas Crim. App., 588; Halsford v. State, 53 Texas Crim. Rep., 42; Stewart v. State, 15 Texas Crim. App., 598; Paderes v. State, 45 S. W. Rep., 914; Bow, alias Thomas, v. State, 34 Texas Crim. Rep., 481; Taylor v. State, 13 Texas Crim. App., 184; Jones v. State, 29 Texas Crim. App., 338.

On question of submitting charge on murder in the second degree: Habel v. State, 28 Texas Crim. App., 588; Moore v. State, 15 Texas Crim. App., 1.

On question of court's failure to charge on manslaughter: Black v. State, 38 Texas Crim. Rep., 58; Neyland v. State, 13 Texas Crim. App., 536; Miles v. State, 18 Texas Crim. App., 156; McLaughlin v. State, 10 Texas Crim. App., 340; Swayne v. State, 48 Texas Crim. Rep., 98, 86 S. W. Rep., 335; Arnwine v. State, 49 Texas Crim. Rep., 5; Burnett v. State, 53 Texas Crim. Rep., 515; Jones v. State, 29 Texas Crim. App., 338; Ripley v. State, 51 Texas Crim. Rep., 126; Sartin v. State, 51 Texas Crim. Rep., 571; Rice v. State, 51 Texas Crim. Rep., 255; Roch v. State, 52 Texas Crim. Rep., 48; Halsford v. State, 53 Texas Crim. Rep., 42; Barton v. State, 53 Texas Crim. Rep., 443; Riley v. State, 81 S. W. Rep., 711; Stewart v. State, 52 Texas Crim. Rep., 273.

On question of prejudice of jurors: Mitchell v. State, 36 Texas Crim. Rep., 278; Hardeman v. State, 53 S. W. Rep., 121; Sewell v. State, 15 Texas Crim. App., 56; Wright v. State, 17 Texas Crim. App., 152; Graham v. State, 28 Texas Crim. App., 582; Randle v. State, 34 Texas Crim. Rep., 43; Washburn v. State, 31 Texas Crim. Rep., 352; Kelly v. State, 28 Texas Crim. App., 120; Hargrove v. State, 33 Texas Crim. App., 165; Long v. State, 10 Texas Crim. App., 186.

*John A. Mobley,* Assistant Attorney-General, and *E. T. Branch,* for the State.—On question of court's charge on murder in the first degree when defendant was convicted of murder in the second degree: Ringo v. State, 54 Texas Crim. Rep., 561; Stovall v. State, 53 Texas Crim. Rep., 30; Potts v. State, 56 Texas Crim. Rep., 39, 118 S. W. Rep., 535; Martinez v. State, 57 S. W. Rep., 838; Mitchell v. State, 36 Texas Crim. Rep., 278; Blake v. State, 3 Texas Crim. App., 581.

On question of prejudice of jurors: Essary v. State, 53 Texas Crim. Rep., 596; Pickett v. State, 56 Texas Crim. Rep., 68, 118 S. W. Rep., 1039; Dow v. State, 55 Texas Crim. Rep., 367; Reinhart v. State, 52 Texas Crim. Rep., 59, and cases cited in opinion.

On question of court's charge on defendant's failure to testify: Anderson v. State, 53 Texas Crim. Rep., 341, and cases cited in opinion.

On question of court's failure to charge on manslaughter: Tate

v. State, 55 Texas Crim. Rep., 397; Pollard v. State, 58 Texas Crim.
Rep., 299.

On question of sufficiency of the evidence: Jirou v. State, 53
Texas Crim. Rep., 18, 108 S. W. Rep., 655; Cole v. State, 35 Texas
Crim. Rep., 384.

RAMSEY, JUDGE.—On April 23 of last year, about 2 o'clock in
the afternoon, on a prominent street in the city of Brownsville,
appellant shot and killed F. Brewer. Thereafter on the 11th day of
October, 1909, an indictment was filed in the District Court of
Cameron County charging appellant with murder. At a trial had
in said court on November 10 appellant was by the jury found
guilty of murder in the second degree, and his punishment assessed
at confinement in the penitentiary for a term of twenty years.

The evidence shows that Brewer, the deceased, was a negro, and
a Pullman porter on a train, which had come from St. Paul, Min-
nesota, and that he was a stout, robust, powerful man. Appellant
lived in Brownsville, and we gather from the evidence was something
like 50 years of age, a cripple and to some extent infirm. In view
of the many issues and questions raised in the appeal, all of which
were presented with great vigor and ability, we deem it essential
to make a particular and detailed statement of the case. It was
shown by the testimony of J. A. Frey, who lived in St. Paul, Minne-
sota, that he was conductor on a Pullman sleeping car, and that
deceased was the porter on same, and that the train conveying him
to Brownsville arrived there about one o'clock in the afternoon on
the 23d day of April, 1909. The killing occurred about two o'clock
the same afternoon. Frey's testimony is convincing to the effect
that deceased had no pistol, and in view of the fact that none was
found on him, it is rendered certain that he was unarmed on the
occasion of the difficulty out of which his death grew. Deceased
had a small pocketknife, a mere penknife, and the evidence clearly
shows that this was not open at the time of the difficulty. Henry
G. Krausse, introduced by the State, testified that he had lived in
Brownsville since he was two years of age, and that he had just
completed at the time of the trial his 44th year; that he was a
jeweler and watchmaker by occupation, and was employed by the
Rutledge Jewelry Company; that he had known appellant since they
were boys together, and had gone to school with him in Brownsville,
and that they had always been good friends; that on the evening
in question he went to where they kept a postal card rack for the
purpose of arranging the cards on same; that the show case was
situated near the door, and just as he was arranging the cards with
his back towards the street, he turned around to the left and saw
appellant and a negro, and that they were clinched; that appellant
had in his right hand a blue-barrel pistol with his arm raised, and
in his left hand he had the negro's shoulder; that deceased had his

left hand on appellant's right wrist, and his right hand under appellant's arm, and they were swaying from one side to the other, both of them a little stooped and jerking backwards and forwards; that the pistol in appellant's hand was somewhat elevated and swaying as if to strike with it; that the negro was somewhat down and turned loose his grip and started to run, and that just as the negro broke loose the shot fired and he holloed, "I am shot." This' witness says appellant fired the shot, and that same was fired just the moment the negro broke loose. "He fired the shot just the moment he released the grip on Marcellus' hand." That as soon as the negro was shot he holloed, "I am shot," and kept holloing all the way down the street. That the pistol which he saw in appellant's hand was a large caliber pistol in appearance, either a 45 or 44-caliber weapon. That when he first saw appellant he had the pistol in his right hand, and his right hand was raised above his head with the negro hold of his right wrist, and appellant's hand moving backward and forward as if to strike, and that it was moving in the direction of the negro's head, and his head seemed to be an inch or two away from it, and somewhat inclined to one side, and as far away as he could get it from appellant and from the pistol. On cross-examination his testimony was unshaken. He repeated that "The instant he broke the clasp of the negro he fired down, and then the negro ran," and that appellant made no attempt to shoot again, and made no motion like shooting again. That he just dropped his hand with the pistol in it, and went off, and at that very moment Policeman Coronado came running up, and he saw appellant hand his pistol to the policeman. He says appellant is badly crippled in the leg, and was a weak man, and that the negro was a very powerful man, rather stout, and from what he saw of him, about a middle-aged man, and would weigh 160 to 170 pounds. On redirect examination he says: "The negro broke loose from Marcellus, he released his hold from off of Marcellus' wrist."

Al G. Carpenter, another witness, testified that he saw the difficulty, and that at the time he heard some words; that he saw some people out in the street, and heard a little row, and was going on working again when he heard another loud voice and then turned; that he did not distinguish the words uttered, but when he turned around he saw appellant and deceased moving around slightly, and heard some words spoken in a high tone; that he saw the pistol raise up and fire and that the negro rushed off around the corner along in front of two buggies; that he could not see the hands of the parties except at the time he saw the pistol; that he may have seen them, but could not say what position they were in; that deceased was close to him most of the time, but there must have been some shifting about, more perhaps than at the time he thought, and that he only observed them a few seconds before the shot was fired. On cross-examination his statement was somewhat modified.

Among other things, he says: "The negro was moving towards Mr. Dougherty when the shot was fired. He must have been lower down than I thought at first for the simple reason that I have thought it over and the negro when upright—the negro got loose from Mr. Dougherty. I suppose he only went a few feet when he got loose from him, perhaps, and after he ran that few feet he was in a bending position and then came back at Mr. Dougherty. I did not notice the position of his hands as he rushed at him. I don't think he came in much of a rush, just bent like this (indicating). He was approaching the defendant, and in a very few seconds the shot was fired. At the time the shot was fired the negro, the deceased, was coming towards the defendant—he was moving about, not coming very much—moving about, you know; I thought in the position I have already illustrated." He says further that he did not notice his hands or the position of his hands. He says further: "As I understand it, the favorite way of a negro to fight is to butt a man with his head; that's the way I understand it, and from what I have seen in the south that's the way they do it; that's what it looked like to me. The negro was a pretty good, strapping looking fellow, not taller than the defendant, but much stouter, and he was about 33, 4 or 5 years old;" and he also says, considering the physical condition of the two men, that he would not have liked to have been in appellant's place in a contest with deceased. On reexamination the testimony of the witness was somewhat further confused. He does, however, make the following statement: "I did not see the defendant draw his pistol. When I saw the pistol the defendant had it up in position to shoot and the negro at that time appeared to me just moving around. The negro's head was bent. I don't know whether he was moving his head or keeping it still, it was done so quickly. I really didn't see much of it, just what I told you I saw. I saw very little of it, just a few seconds. I don't know whether the defendant did or did not have his hands on the negro before the shot was fired. I can't say whether his hands were on him or not." Celedonio Garza, sheriff of Cameron County, was introduced, who testified that the effects in deceased's pocket were taken from him at the inquest held by the justice of the peace; that he took all the things out and handed them to the witness; that the contents were about seven dollars, more or less, a handkerchief and a small pocketknife; that the knife was what is called a penknife, and was closed when found in the front pocket of deceased. That there was no pistol or other weapon on deceased's person. Except the testimony of the physician giving the location of the wound, which was in front and about two inches above the left nipple, ranging downward, and a mortal wound, there was no other testimony. The above fully, and, we think, fairly, states the case. The court gave in charge to the jury the law of murder in the first degree, murder in the second degree, and self-defense,

both in respect to real and apparent danger, but did not charge on manslaughter.

1. Objection was made to the admission by the court of testimony to the effect that deceased was unarmed at the time. As affecting the issues of actual attack and actual danger, and as a circumstance to be considered by the jury in determining who provoked the difficulty, it must seem too clear for argument or discussion that this testimony was admissible.

2. It is seriously contended that the court erred in charging on murder in the first degree in that the facts do not raise the issue of murder in the first degree. This contention is denied by the State, which contends that express malice is in the case on the theory of a reckless disregard of human life, and that the killing was wanton, and the jury were justified in believing that it was deliberate and unprovoked. If it could be held that murder in the first degree was not in the case, it is settled in this State beyond doubt or controversy that since appellant was found guilty of murder in the second degree, that he can not complain either of the fact that the court submitted murder in the first degree, or of errors in the charge touching that degree of murder. In the case of Potts v. State, 56 Texas Crim. Rep., 39, 118 S. W. Rep., 535, we said: "Serious complaint is made that the court erred in charging on the law and submitting the issue of murder in the first degree. We do not believe murder in the first degree was raised by the evidence. Appellant, however, was acquitted of this grade of homicide. It is well settled by such an unbroken line of authorities as requires no citation that where on a charge for murder appellant was acquitted of murder in the first degree, he can not complain either of the fact that such degree of murder was submitted or of errors in respect thereto. This is the settled law of this State." Authorities might be cited indefinitely in support of this proposition, but it is deemed unnecessary.

3. Again, it is urged that the court erred in submitting to the jury the issue of murder in the second degree, because, as claimed, the facts in evidence do not raise this degree of murder. To this contention we can not accede. In the case of Hamby v. State, 36 Texas, 523, it was held that "When a homicide has been proven, that fact alone authorizes the presumption of malice, and unexplained would warrant a verdict for murder in the second degree." We think perhaps the rule is rather too broadly stated there, but it is certain that where an unlawful killing is shown, that such fact alone authorizes the presumption of malice, and unexplained, would and does warrant a verdict of murder in the second degree. This doctrine is thus well stated by Judge Davidson in the case of Wheeler v. State, 54 Texas Crim. Rep., 47: "So we have a case made by the State of two parties engaged in a deadly conflict when they are first seen by State witnesses without any attempt on the

part of the prosecution to show the origin or reason of the difficulty. This state of facts would not justify a conviction of murder in the first degree. An unexplained killing could not rise above the dignity of murder in the second degree. No express malice is shown on the part 'of the State's evidence." We think there were circumstances in the case from which the jury were well justified in concluding that appellant was the aggressor, and that the killing was unlawful. The fact that deceased was an utter stranger in the town, and from his race might and doubtless did lead them to conclude that he would have been unlikely to have provoked a difficulty with a white man. This would doubtless have had some weight. The fact that deceased was wholly unarmed at the time was another circumstance from which the jury might have thought it improbable that he was the aggressor in or had brought about the difficulty. The facts rather indicate that during the whole of the actual trouble deceased was mainly engaged in avoiding blows from appellant's pistol, and seeking to restrain him from firing upon him. The evidence clearly raises the issue that his head was inclined to one side, and that he was solely engaged in undertaking to defend himself against what seemed to him to be and which in fact proved to be a deadly assault upon him. In view of the fact that deceased was a man so much stouter and stronger than appellant, that his left hand only was engaged in restraining the hand of appellant in which he carried the pistol, while his right hand was disengaged and yet no effort made on his part either to injure appellant or to assault him, would be a further circumstance leading the jury to believe that deceased's conduct was wholly defensive. The fact that appellant was wholly uninjured, when if he had been assaulted by a man of deceased's strength he must have suffered injury, was another circumstance from which the jury might have drawn the conclusion that the killing was unlawful. Just what weight the jury should have given these facts and circumstances was, of course, for them to decide. They are in the case, and they are circumstances to which, as we believe, they might well attach controlling importance. So that we believe the court did not err under the facts in submitting the issue of murder in the second degree.

4. Again, complaint is made of the action of the court in charging the jury in respect to the failure of appellant to testify. It is not complained that the charge itself is inaccurate or in any respect erroneous, but the complaint goes to the effect that no such charge should have been given. This charge is as follows: "The law provides that the failure of the defendant to testify shall not be taken as a circumstance against him, and you must not allude to, comment on or discuss in your retirement the failure of the defendant to testify in this case, nor will you refer to or discuss any matter not before you in evidence." This instruction is almost in the exact

language of the statute, and charges much less correct have been approved by this court, and it has been uniformly held that there was no error in giving such a charge. Anderson v. State, 53 Texas Crim. Rep., 341; O'Hara v. State, 57 Texas Crim. Rep., 577, 124 S. W. Rep., 95; Singleton v. State, 57 Texas Crim. Rep., 560, 124 S. W. Rep., 92.

5. The most serious question arising in the case, as we believe, is the ground of the motion raising the question that the court should have instructed on the law of manslaughter. From a careful inspection of the record, and the most mature deliberation, we have become convinced that manslaughter was not in the case, nor raised by the evidence. In the case of Potts v. State, 56 Texas Crim. Rep., 39, 118 S. W. Rep., 538, we said: "The law implies malice from the fact of an unlawful killing in the absence of proof of express malice, and where there is nothing in the evidence to reduce the grade of homicide to manslaughter or to some lesser degree. It is not the law, as we have frequently held, that every killing done from a rash and inconsiderate impulse is manslaughter, but to reduce an unlawful killing to the grade of manslaughter, adequate cause must always exist which renders the mind incapable of cool reflection. There is no suggestion in this case of adequate cause." Again, in the case of Ford v. State, 50 S. W. Rep., 350, it was held that where one accused of murder testified that deceased drew a razor and attempted to cut him, but no pain or bloodshed was caused, and there was nothing else to show any adequate cause for defendant's passion, a charge on manslaughter was properly refused. In that case, Judge Henderson, speaking for the court, says: "We have examined the record carefully, and fail to find any manslaughter in the case. Whatever may have been the passion excited in appellant's mind, the record utterly fails to show any adequate cause for such passion. Appellant's own evidence, if it is to be credited, would suggest the theory of self-defense at the inception of his attempt to take the life of deceased. He says that the deceased drew a razor on him and attempted to cut him, but even from his own testimony there is no evidence of any assault on him inflicting pain or bloodshed. The court gave a charge on self-defense, and we fail to see any predicate for a charge on manslaughter." In the case of Jirou v. State, 53 Texas Crim. Rep., 18, we said: "Many of the decisions of this court, if not carefully analyzed, would tend to suggest the idea that manslaughter is in every case in which the issue of self-defense is raised by the testimony. The court, it seems to the writer (in which Judge Brooks agrees), has gone very far to justify this inference; that this, however, is not a correct legal principle we think is clear. As applied to the facts of this case, it seems manifest to us that there were substantially two issues in it. On the part of the State there was made a strong case of wilful murder; on the part of the appellant there was, if believed, a clear case of self-defense.

It could not, of course, be both. It must be one or the other. It seems to us that the language of Judge Brooks, in the case of Lentz v. State, 48 Texas Crim. Rep., 2, 85 S. W. Rep., 1068, applies with peculiar force here. In that case the court say: 'Appellant's second insistence is that ·the court erred in not charging on the law of manslaughter. From the State's testimony the issue of manslaughter is not presented. Appellant's testimony makes out a case of perfect self-defense, while the State's testimony shows an unprovoked killing upon a grossly inadequate cause; in fact, no cause at all.' " Applying these principles to the case at bar, what fact is there which in law would constitute adequate cause? It has not occurred to us that there is, on a fair review of the testimony, any fact or any group of facts which raise the issue of adequate cause. The issue of self-defense was in a manner raised by the testimony, but there was no insulting conduct, no injury, no bloodshed, indeed, no fact. which, as we believe, could have had the effect to have reduced the killing below the grade of murder in the second degree, and we believe and hold that the court did not err in declining and refusing to charge on manslaughter.

6., In the motion for new trial it was insisted that, through no fault of appellant, that two jurors had sat upon the jury which convicted him, who had theretofore formed opinions hostile and adverse in his case; that these facts were unknown to appellant; that he had not exhausted his challenges; that these jurors qualified on their voir dire examination, and the fact that they had opinions and prejudices adverse to appellant was concealed by them and operated to his disadvantage. These jurors were I. B. McFarland and Emile Wise. There is a conclusive reason why we would not be justified in reversing the case on account of these matters. Appellant's motion touching the disqualification and prejudice of these jurors is quite full, and is supported by more than one affidavit. The motion is skillfully drawn, and if it stood alone would have presented a strong showing for a new trial. As to the juror McFarland, the State's reply is conclusive in this: that McFarland states that the fact that he had an opinion touching the case was disclosed to counsel for appellant, and that they said to him, in substance, that it made no difference what his opinion was, that they wanted him as a juror in the case. As to the juror Wise, he does not, in terms, deny the statements accredited to him, but says, in substance, that he has no recollection of making them and that if he did make them, they were mere general expressions of opinion, and that he in fact had no opinion touching the case that would in any way or in fact did in any way influence his action as a juror; that he never talked with any one of the witnesses in the case, and at the time of being taken on the jury had no opinion that would influence his verdict, and that as a matter of fact, after hearing the evidence and the charge of the court, he at first voted

for acquittal, and was one of the last men on the jury to agree to a verdict of guilt, and that this conclusion was reached by him on a fair discussion of the evidence after weighing same and from no other source. That, as stated, he had no recollection of having made any of the statements attributed to him, but if he did make same, that they were based on hearsay alone, and that he was not influenced thereby in his action as a juror, and that there was no reference made in the jury room to anything except the evidence brought out on the trial; that he tried the case wholly on the evidence and the charge of the court, and was not influenced in the slightest degree by anything except the evidence in the case, and the law of the case, and that he had no prejudice whatever against appellant when he was taken on said jury or any time thereafter, and that he did not know who the witnesses were or how many of them. Matters of this sort are, in the nature of things, largely within the discretion of the trial court, and if presented in such way as to be the subject of review, we are not prepared to say that under any circumstances could this ground of the motion be sustained. However, as the record comes to us, we think and hold we are concluded by the action of the trial court. The judgment of the court below overruling the motion recites that the court, having heard the motion and the evidence thereon submitted, is of the opinion that the same should be overruled. What this evidence is we do not know, nor would we be justified in assuming that the evidence to which the court refers was confined alone to the affidavits attached to appellant's motion, and the affidavits attached to the State's resistance thereof. In the case of Cabrera v. State, 56 Texas Crim. Rep., 141, 118 S. W. Rep., 1054, in passing on a matter quite similar to this, it was said: "Attached to the bill presenting this matter is the affidavit of the juror, but the district judge found as a matter of fact that said affidavit was untrue, and the juror trying this case was in no way influenced by what occurred, and the juror Hueboter had stated facts not true, and that the verdict of the jury was not in any way affected by what occurred in the jury room, nor what occurred in the presence of Mr. Lenz. To present these matters in detail would be unnecessary, since after a very careful reading of same we hold that the irregularities complained of were harmless to defendant and did not in any way jeopardize his rights or increase his punishment, pains or penalties." In the case of Fox v. State, 53 Texas Crim. Rep., 150, we said: "Complaint is made of the misconduct of the jurors, A. A. Heppard, J. H. Fesmire and Jack Castles. The several matters of misconduct in respect to all these jurors was made the matter of diligent inquiry by and under the direction of the court. There is ample evidence to sustain the findings of the court that there was no such misconduct on the part of any of these jurors as to entitle appellant's motion on this ground to serious consideration. Indeed, this is our judgment, after

having carefully read the entire record. Therefore, we hold that the court having found against appellant's contention in this condition of the record, and there being ample evidence to support said findings, this court ought not and will not disturb said judgment of the trial court. Code of Criminal Procedure, article 821; Mayes v. State, 33 Texas Crim. Rep., 33; Cockerell v. State, 32 Texas Crim. Rep., 585; Driver v. State, 37 Texas Crim. Rep., 160; Shaw v. State, 32 Texas Crim. Rep., 155."

There is, it should be stated, no certificate of the trial judge that the affidavits to the motion was the only evidence, and that there was no oral testimony submitted on this issue; nor does the record in any manner authenticate what the testimony introduced was touching this matter. Under our Code of Criminal Procedure, article 821, authorizing the State to take issue with the accused upon the truth of the causes set forth in the motion for a new trial, and permitting the judge to hear evidence, counter affidavits and oral proof are receivable on motion for a new trial. Pickett v. State, 56 Texas Crim. Rep., 68, 118 S. W. Rep., 1040. Again, in the case of Dowd v. State, 55 Texas Crim. Rep., 367, it appeared that motion for new trial was filed based on the ground that after the jury retired to consider their verdict, one of them talked with the county judge of the county, and in the course of the conversation the county judge said to the juror that defendant in said cause was guilty of murder, not knowing at the time that he was a juror in the case; that this juror was absent from the others without defendant's knowledge or consent. This motion was sworn to by the defendant, but the court states: "We find no evidence in the record to support the affidavit, but the judgment of the court recites that the court heard the evidence on the motion and that same should be overruled. There is no bill of exception in the record." Under these circumstances it was held that the motion for new trial was properly overruled. See also Williams v. State, 56 Texas Crim. Rep., 225, 120 S. W. Rep., 421; Brandt v. State, 57 Texas Crim. Rep., 157, 122 S. W. Rep., 23. Under all the circumstances we feel like, as presented, that we would not be justified in reversing the conviction on the grounds urged, and out of deference and respect to the judgment and conclusion and action of the trial court in respect to a matter of practice such as this, where, in the nature of things, much would depend upon the character of the witnesses, we ought not, however presented, to interfere.

We have thus reviewed practically every question raised on the appeal. The case was one essentially of fact. Whatever might be our own conclusion, it can not be said that there is no evidence in the record to sustain the verdict of the jury. The trial court who had far better opportunities than, in the nature of things, we can have, has sanctioned their verdict and approved same. In this con-

dition of the record interference on our part would be unwarranted and unwarrantable.

It follows, therefore, that the judgment should be and is hereby in all things affirmed.

*Affirmed.*

[Rehearing denied May 25, 1910.—Reporter.]