### NED BERGIN v. THE STATE.

#### No. 4105.   Decided June 7, 1916.

**1.—Murder—Evidence—Reproduction of Testimony.**

   Where a witness had testified at defendant's examining trial and was cross-examined by him, and had since died, there was no error in permitting the State to reproduce his testimony.

**2.—Same—Argument of Counsel.**

Where, upon trial of murder, the State's counsel in his closing argument said that the only way to stop red-handed murders was to write verdicts of guilty, the same was not reversible error. Following Sue v. State, 52 Texas Crim. Rep., 122, and other cases.

**3.—Same—Charge of Court—Practice on Appeal.**

Where, upon trial of. murder, the jury found defendant guilty of manslaughter, the court's charge on murder need not be considered. Following Dougherty v. State, 59 Texas Crim. Rep., 464.

**4.—Same—Charge of Court—Deadly Weapon.**

Where the court's charge on manslaughter did not assume that the knife shown to have been used was a deadly weapon, the contention that he had done so is untenable.

**5.—Same—Charge of Court—Verbal Provocation—Charge of Court.**

The contention that the court should have charged the jury that verbal provocation, if any there was by the defendant towards the deceased, did not justify the deceased in committing an assault, is untenable, as this applied only to the defendant.

**6.—Same—Requested Charge—Provoking Difficulty.**

Where, upon trial of murder, defendant excepted to the court's charge, submitting the issue of provoking a difficulty, because the same was not called for, and was too often repeated by him, but it appeared from the record that this contention was untenable, there was no reversible error.

**7.—Same—Motion for New Trial—Fundamental Error—Article 743.**

In the absence of fundamental error, other objections to the court's charge raised in the motion for new trial for the first time, can not be considered under article 743, Code of Criminal Procedure.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Meek & Kahn,* for appellant.—On question of reproduction of testimony: Kemper v. State, 63 Texas Crim. Rep., 1.

On question of provoking difficulty: Best v. State, 58 Texas Crim. Rep., 327; McDougal v. State, 185 S. W. Rep., 15.

On question of argument of counsel: McKinley v. State, 52 Texas Crim. Rep., 182; Davis v. State, 54 id., 236; Smith v. State, 55 id., 563.

On question of fundamental error: City of Laredo v. Russell, 56 Texas, 398.

*C. C. McDonald,* Assistant Attorney General, *John H. Crooker, J. T. Harris,* and *E. T. Branch,* for the State.—On question of argument of counsel: Mooney v. State, 76 Texas Crim. Rep., 539.

On question of provoking difficulty: Sanders v. State, 83 S. W. Rep., 712; Tardy v. State, 47 Texas Crim. Rep., 444; Best v. State,

61 id., 551; Bateson v. State, 46 id., 34; Sorrell v. State, 169 S. W. Rep., 299; McDougal v. State, 185 S. W. Rep., 15; Mason v. State, 163 S. W. Rep., 66, and cases cited in opinion.

On question of deadly weapon: Walters v. State, 37 Texas Crim. Rep., 388; Garcia v. State, 48 id., 528; Colbert v. State, 52 id., 486; Prescott v. State, 54 id., 481; Stanton v. State, 151 S. W. Rep., 808; Luttrell v. State, 157 S. W. Rep., 157; Thompson v. State, 24 Texas Crim. App., 383.

HARPER, JUDGE.—Appellant was convicted of manslaughter and his punishment assessed at two years confinement in the State penitentiary.

There are but two bills of exception in the record, although in addition thereto there were several exceptions reserved to the charge as given, and the failure of the court to give one special charge requested.

In the first bill, it is contended that the court erred in permitting the State to reproduce the testimony of Joe Roberts. It was proven that Joe Roberts was dead, and that prior to his death he had testified at the examining trial of appellant, at which time he had ample opportunity to and did cross-examine the witness. In Branch's Penal Code, section 76, the authorities are collated, holding the court did not err in this ruling.

In the next bill it is shown that the assistant criminal district attorney in his closing argument said: "that the only way to stop red-handed murders in this community is to write verdicts of guilty that will stand out as the noon day sun." Such remarks have frequently been held to present no ground for reversal of a case under facts similar to those in this case. Sue v. State, 52 Texas Crim. Rep., 122; Vann v. State, 48 Texas Crim. Rep., 11; Choice v. State, 54 Texas Crim. Rep., 517.

The first exception to the court's charge is that he erred in submitting the issue of murder. As the jury found appellant guilty of manslaughter, there is no necessity to discuss this contention. Dougherty v. State, 59 Texas Crim. Rep., 464.

Appellant contends that the court's charge on manslaughter assumes the knife shown to have been used was a deadly weapon. This contention can not be sustained, for the language used is not subject to such construction. The court instructed the jury: "If you believe from the evidence beyond a reasonable doubt that the defendant with a deadly weapon," etc. This required the jury to find beyond a reasonable doubt that the knife was a deadly weapon. In the very next paragraph of the charge he instructs the jury that if the knife used was not a deadly weapon, he would be guilty of no graver offense than manslaughter. A charge must be read as a whole, and if thus taken it correctly presents the law, there is no ground for complaint.

The court corrected his charge to correspond to exceptions three and four; therefore, we will not discuss them.

In exception No. 5 it is contended that the court should have instructed the jury that "verbal provocation, if any there were by the defendant towards the deceased, did not justify the deceased in committing an assault upon him (appellant)," and that the court erred in failing to give his special charge presenting that issue. The deceased was not on trial, but appellant was on trial for the assault he made on deceased. Of course, evidence of the acts and conduct of deceased was admissible to aid the jury in determining whether or not appellant was justifiable in cutting him, and this phase of the case was fully presented in the court's main and the three special charges given at appellant's request.

The third special given charge fully covers appellant's sixth and seventh exceptions to the court's main charge.

The eighth and last exception to the charge is "that the court erred in submitting the issue of provoking the difficulty in his charge; that such a charge is not called for and is repeated too often and too prominently, and virtually takes away from the defendant the right to act in self-defense." In connection with this paragraph of the charge, the court instructed the jury: "If defendant did no acts or used no words intended to and reasonably calculated to provoke a difficulty, then you will not consider the question of provoking the difficulty." As the court instructed the jury fully on the law of self-defense, and gave appellant's charges on that issue when he instructed the jury as above, it certainly can not be said, if a charge on provoking the difficulty was called for by the evidence, it took away appellant's right of self-defense. And as the court presented the issue only once, it can not be said he made it too prominent, or that it was referred to too often. If the evidence called for no such charge, of course, the exception should have been sustained, and it would have been error not to have done so. There were three eyewitnesses to the transaction who testified: Will Roberts, Joe Roberts and S. T. Cordua. The deceased was at his place of business, and Will Roberts testified: "When the defendant walked up there he said, 'Here I am again, Andy, have me arrested again,' and Andy (deceased) said, 'I did not have you arrested, Barney, that is a mistake.' And the defendant said: 'Yes, you did, the cops told me you did have me arrested,' and the deceased said, 'You tell those cops and you, too, if you say I had you arrested, you are G—d d—d liars.' They chewed the rag like any two men and the deceased told him to go on away from there, 'I don't want you around here, you let me alone, I ain't bothering you, I don't want to have any trouble with you,' and the defendant stood there and chewed the rag with him, a fellow could not hardly remember what he said, both cursing and going on. They argued there and cursed and went on about Andy having him arrested. Andy told him to go away from there, 'I don't want you around here, I don't want any trouble with you,' and the defendant stood there, and just as the defendant made the remark, and Barney made the remark, 'You know what I

ought to do to you?' and when he said that Andy stepped to the shanty and got this piece of iron and as he came back on out Barney made the remark, 'You know what I ought to do to you?' He said, 'No, you ought to go on away from here and let me alone,' and Barney said to him, 'No, I ought to stamp the G——d d——n s——t out of you,' and that is the time deceased hit at him with the poker. I never did see defendant go in his pocket, and did not see any knife, and Andy made the remark and said, 'Yes, G——d d——n you,' he went into his pocket, I never seen no knife at all, and he pulled his hand out of his pocket, and he said, 'Yes, you pulled your G——d d——d knife on me.' The deceased said, 'You got your knife out.' Defendant said, no, he did not have his knife out, and opened his hands, no knife being visible. Before he came out with the iron poker the defendant had put his hand in his pocket. Then deceased said he had pulled a knife on him, and then deceased went in the shanty and got the iron poker. When he came out he kinder sidled up to defendant that way, and stepped back and the defendant said something else to him, I can not remember just now what it was, and the deceased hit him and hit him a glancing lick on his head and he dodged out in the street and fell on his behind out in the street, the defendant did, and the deceased followed him up and when Barney was getting up the deceased picked up a chair and made a pass at him and when he did the defendant ducked under him and cut him that way. He did not strike him with the chair, he had it raised this way and Andy dropped the chair down and stepped back and said, 'Oh, my God.' When the defendant cut him he stepped back around the chair that was sitting there around this way, and when I seen him, saw the blade, he had it in his hand that way, I just could see the blade of the knife. The blade of the knife was about two inches long. I believe that Barney did make the remark, 'You know what I think of you,' and the old man did not say anything, and the defendant said, 'I think you are a no count son of a b——h.' I believe that the defendant did make a remark like that, and then he told him he ought to stamp the G——d d——n s——t out of him, the defendant there said that, talking to that old man there. The old man was there at his place of business, he had work there." The testimony of Joe Roberts and S. T. Cordua is in substance the same, although it might be said to vary in some slight details. But by all the evidence it is made evident that appellant went to deceased's place of business and made some remarks about deceased having had him arrested, and suggested that he have him arrested again. That this was the inception of the difficulty on this occasion, and if he did not intend to provoke deceased into a difficulty, we are at a loss to understand why he went to the place where he knew deceased was a night watchman and accosted him in this way and used the language he did. We think this authorized the court to submit the issue to the jury for their determination, and the court did not err in so doing.

These are all the exceptions reserved to the charge at the time same

was presented to appellant and all that were reserved prior to the time the same was read to the jury, and the verdict rendered. In the motion for a new trial he seeks to raise other objections to the charge, but since the amendment to article 743 it has been uniformly held this can not be done, unless fundamental error is presented. Vernon's Proc., art. 743, and authorities cited thereunder in sec. 50.

The judgment is affirmed.

*Affirmed.*