HORACE COLLINS, JR., v. THE STATE.

No. 3583.    Decided June 2, 1915.

Rehearing denied June 25, 1915.

1.—Robbery—Indictment—Time of Presentment.

Where the indictment for robbery alleged that heretofore, etc., this necessarily conveys the fact that the offense was committed prior to the presentment of the indictment, and there was no error in overruling a motion to quash on that ground.

**2.—Same—Time of Offense—Indictment.**

Where the defendant contended that the evidence would show that the offense was committed on the 17th of September instead of the 30th of said month as alleged, this would in nowise affect the validity of the indictment; besides, it is not necessary to prove that said offense was committed on the 30th. Following Cudd v. State, 28 Texas Crim. App., 124, and other cases.

**3.—Same—Indictment—Duplicity.**

Upon trial of robbery, the indictment was not duplicitous nor repugnant because in different counts it charged the defendant with being an accomplice, an accessory and a principal in the commission of the offense, all being based on the same transaction. Following Shuman v. State, 34 Texas Crim. Rep., 69, and other cases.

**4.—Same—Motion to Quash—Copy of Indictment.**

Upon trial of robbery after the announcement of ready for trial and the jury had been selected and sworn in the case and defendant arraigned, there was no error in overruling a motion to quash the indictment because as read it was not a true copy of the one served on him; this might be ground for postponement, but not to quash the indictment.

**5.—Same—Waiver—Copy of Indictment.**

Where defendant moved to quash the indictment because a copy of same served on him was not an exact copy, etc., his acts in appearing and announcing ready for trial and permitting a jury to be sworn and empaneled and to be arraigned was a waiver in law, and there was no error in overruling the motion. Following Rice v. State, 49 Texas Crim. Rep., 569, and other cases.

**6.—Same—Election by State—Different Counts—One Act.**

Where, upon trial of robbery, the indictment in various counts charged the defendant as accessory, accomplice and principal in the offense and was placed on trial as a principal, there was no error in overruling his motion compelling the State to elect upon which count it would ask a conviction, all the counts being based upon the same transaction. Following Smith v. State, 34 Texas Crim. Rep., 123, and other cases.

**7.—Same—Rule Stated—Election by State.**

While it is well settled that where an indictment charges in separate counts one or more distinct felonies and the evidence develops distinct transactions, the State can be required to elect, such rule has no application to a case like the instant one, where only one transaction or act is charged and different counts are contained in the indictment. Following Goode v. State, 57 Texas Crim. Rep., 220, and other cases. Overruling Simms v. State, 10 Texas Crim. App., 131.

**8.—Same—Rule Stated—Election by State.**

If only one transaction or act is charged and different counts are contained in the indictment to meet the possible phases that the testimony may assume, the State will not be required to elect. Following Willis v. State, 34 Texas Crim. Rep., 148, and other cases.

**9.—Same—Rule Stated—Election by State—Variance.**

If different counts charging the same character of offense are alleged in the indictment to prevent a variance and there is evidence supporting each, the State is not required to elect. Following Houston v. State, 47 S. W. Rep., 468, and other cases.

**10.—Same—Rule Stated—Pleading.**

It is also said to be unnecessary and improper to allege that the offenses charged are different, nor is it necessary that the pleadings should expressly state that the counts are intended to cover the same offense.

**11.—Same—Election by State—Charge of Court.**

But even if an election by the State had been necessary, the defendant can not complain because the court submitted the fourth count of the indictment only for the consideration of the jury, and this was tantamount to an election by the State.

**12.—Same—Jury and Jury Law—Voir-Dire Examination.**

Where, upon trial of robbery, the question propounded to the jurors upon their voir dire had no tendency to elicit information bearing on the grounds of challenges under Article 692, Code Criminal Procedure, and would have no legitimate bearing on the issues of whether such jurors would be competent or incompetent to try the case, there was no error in not permitting such questions.

**13.—Same—Practice—Jurors Asking Questions.**

Where defendant complained that some of the jurors during the trial propounded questions to some of the witnesses, and no objection was made thereto, as was provided by law, there was no error.

**14.—Same—Witness Under Rule—Discretion of Court—Officers of Court.**

While only the officers of the court proper have a right to be excused from the rule, yet in the discretion of the court, there was no reversible error in excusing certain other witnesses for the State from the rule, no abuse of discretion having been shown, and no bill of exceptions having been reserved at the proper time. Following Powell v. State, 50 Texas Crim. Rep., 592.

**15.—Same—Evidence—Instrument Used—Identity of Defendant.**

Where, upon trial of robbery, the identity of the defendant was one of the issues in the case, and the evidence tended to show that a certain ice-pick used in the perpetration of the robbery was shown to have been made by the defendant and carried home, there was no error in admitting testimony relative to the finding and identification of a certain piece of iron called an ice-pick.

**16.—Same—Identification by Voice**

Where, upon trial of robbery, one of the issues was the identification of defendant as one of the perpetrators of the crime, there was no error in admitting testimony that, according to the best judgment of the witness, the voice he heard during the perpetration of the robbery was that of the defendant. Following Price v. State, 35 Texas Crim. Rep., 501, and other cases.

**17.—Same—Evidence—Pistol Found.**

Where, upon trial of robbery, the testimony showed that a pistol was used in effecting the robbery and that defendant's pistol was probably used, there was no error in admitting in evidence testimony that a pistol was found at defendant's home under his pillow.

**18.—Same—Evidence—Other Transactions—Identification.**

Upon trial of robbery, where the identification of the defendant as one of the principals in the crime was an issue in the case, there was no error in permitting the State on cross-examination of a defendant's witness, who was the wife of the assaulted party, to prove by her that the defendant some time prior to the robbery had endeavored to get her to place some powders in the coffee of the prosecuting witness, the husband of the witness, and had told her where to go to get the powders, as all testimony which tended to show motive on the part of the defendant that he desired the death of the prosecuting witness would be revelant to show his identity as one of the principals in the offense.

**19.—Same—Evidence—Defendant as a Witness.**

Where, upon trial of robbery, defendant was asked on cross-examination if there were not other indictments against him for felonies, and he answered

in an evasive way, there was no error in permitting the indictments to be introduced in evidence, the court properly limiting said testimony to his credibility.

### 20.—Same—Evidence—Impeaching Witness—Charge of Court.

Where, upou trial of robbery, defendant introduced a certain witness that he and others committed the crime, and the State in rebuttal showed that said defendant's witness in conversation with others stated that he, others and defendant committed the crime, and the court properly limited said testimony to the credibility of the witness, there was no error.

### 21.—Same—Evidence—Statement of Witness.

Where defendant's witness denied making a written statement and said he did not sign same, there was no error in permitting the State to introduce witnesses to prove that he did sign such statement, and to introduce such signature in evidence.

### 22.—Same—Voice—Telephone—Evidence.

Upon trial of robbery, where a State's witness testified that he recognized the voice of defendant from hearing him talk over the telephone, there was no error in permitting him to testify what he heard defendant say in the conversation over the telephone. Following Givens v. State, 35 Texas Crim. Rep., 536, and other cases.

### 23.—Same—Evidence—Conspiracy—Motive of Witness.

Upon trial of robbery, where defendant contended that the evidence of State's witnesses raised the issue that there was a conspiracy existing on their part and the prosecuting witness to send defendant to the penitentiary and that, therefore, the court should submit a special charge on that issue, there was no reversible error on the part of the court's failure to do so; as this was a matter of argument before the jury.

### 24.—Same—Alibi—Charge of Court.

Where, upon trial of robbery, defendant pleaded an alibi, and the court submitted this issue in a charge conforming to approved precedent, there was no reversible error. Following Gallaher v. State, 28 Texas Crim. App., 247, and other cases.

### 25.—Same—Principals—Charge of Court.

Where, upon trial of robbery, the evidence showed that if defendant was present, he participated in the robbery and the court's charge on principals aptly stated the law as applicable to the facts in the case, there was no error.

### 26.—Same—Motive—Charge of Court.

Where, upon trial of robbery, the evidence showed a motive for the crime, the court correctly refused a requested charge on want of motive; the defendant offering no evidence that he had no motive.

### 27.—Same—Charge of Court—Accomplice—Accessory.

Where the court specifically withdrew the counts in the indictment charging the defendant as an accomplice and accessory, and submitted the one in the indictment which charged him as a principal, under a proper charge of the court, there was no error in the court's failure to submit the issues of accomplice and accessory.

### 28.—Same—Weight of Evidence—Charge of Court.

Where, upon trial of robbery, one of defendant's witnesses exonerated the defendant from the participancy in the crime, there was no error in the court's failure to submit a requested charge that unless the jury believed the testimony of said witness was wholly and totally false to acquit, as this would have been a charge on the weight of the evidence.

**29.—Same—Charge of Court—Statement of Witness.**

Where only the signature of defendant's witness to a certain written statement was admitted in evidence, to impeach his testimony that he could not write, and such statement itself was not introduced in evidence, there was no necessity for the court to instruct the jury not to consider such statement.

**30.—Same—Charge of Court—Singling Out Testimony.**

Upon trial of robbery, there was no error in the court's refusal to submit a requested charge singling out the testimony of a defendant's witness who had testified in his behalf.

**31.—Same—Charge of Court—Count Submitted.**

Where, upon trial of robbery, the count in the indictment which the court submitted to the jury merely charged the defendant with the commission of the offense, the fact that the evidence tended to show that other parties alone were present assisting defendant would present no variance, and there was no error in the court's failure to charge thereon.

**32.—Same—Requested Charges.**

Where the requested charges were fully covered by the court's main charge in so far as they were the law of the case, there was no error in refusing them.

**33.—Same—Sufficiency of the Evidence.**

Where, upon trial of robbery, the evidence showed that defendant was guilty under aggravated circumstances, although he pleaded an alibi, the conviction was sustained, and there was no reversible error.

**34.—Same—Practice on Appeal—Bill of Exceptions.**

This court has never before been criticized for taking the care and trouble to act on each bill of exceptions presented, and where appellant's counsel are not serious in the submission of any bill of exceptions, they should so state in their brief.

**35.—Same—Motion to Quash—Motion to Postpone—Waiver.**

Where defendant's motion was to quash and set aside the indictment because it was not a true original of the certified copy served on him, he could not claim on appeal that this was a motion to postpone the trial. Following Hardy v. State, 31 Texas Crim. Rep., 289, and other cases; besides, defendant waived service of a copy of the indictment.

**36.—Same—Election by State—Case Overruled.**

The contention of the appellant that the case of Simms v. State, 10 Texas Crim. App., 131, correctly enunciates the law on the question of election by the State is untenable.

**37.—Same—Jury and Jury Law—Questions on Voir Dire—Discretion of Court.**

While the examination of jurors on their voir dire is largely under the discretion of the court, yet the examination should be allowed to be broad when its purpose is to show that an opinion on the merits of the case has become fixed in the juror's mind, or that he entertains a bias or prejudice, but where the questions to which the objections were sustained would bear no relation to these matters, there was no error in overruling the objections.

**38.—Same—Witness Under Rule.**

Where appellant objected that certain witnesses had been permitted to testify upon the trial who were not under the rule which had peen invoked, he should have objected at the time the witnesses were offered, and the injury should have been pointed out in a proper bill of exceptions to show that the

court has abused his discretion in the premises; otherwise, the matter will not be considered on appeal.

### 39.—Same — Evidence — Identification of Defendant — Motive — Other Transactions.

The rule is that evidence of collateral offenses becomes revelant to the principal charge when evidence thereof will serve to identify the accused as the person committing the offense for which he is on trial, and there was no error, therefore, to admit in evidence the fact that defendant had sought to have powders administered in the coffee of the prosecuting witness by the wife of said witness, some time prior to this offense, not upon the issue of motive, but on the issue of identity of defendant, as the person who at the time of the robbery made the murderous assault on said prosecuting witness. Following Satterwhite v. State, 6 Texas Crim. App., 609, and other cases.

### 40.—Same—Evidence—Other Offenses.

Where, upon trial of robbery, the evidence failed to identify the defendant with that degree of conclusiveness which is necessary, there was no error in permitting the State to introduce testimony of attempted robberies which would serve to identify the defendant in the instant case.

### 41.—Same—Charge of Court—Conspiracy.

Appellant's contention that as he adduced evidence tending to show that the prosecuting witness and others had entered into a conspiracy to send him to the penitentiary and that the court should have submitted this issue is untenable, as this would be no defense, but simply weaken the testimony offered by the State. Following Carter v. State, 39 Texas Crim. Rep., 345, and other cases.

Appeal from the District Court of Tarrant. Tried below before the Hon. R. B. Young.

Appeal from a conviction of robbery; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*H. D. Wood, Sam S. Beene, A. W. Cameron* and *P. O. Lopp,* for appellant.—On question of certified copy of indictment and motion to quash: Holden v. State, 71 S. W. Rep., 600; McDuff v. State, 4 Texas Crim. App., 58; Stokes v. State, 35 Texas Crim. Rep., 279; Lightfoot v. State, 77 S. W. Rep., 792; Brewin v. State, 85 S. W. Rep., 1140.

Upon question of election by State: Simms v. State, 10 Texas Crim. App., 131; Masterson v. State, 20 id., 574; Dalton v. State, 4 id., 333; McKenzie v. State, 32 Texas Crim. Rep., 568; Blackwell v. State, 51 id., 24.

On question of examination on voir dire: Hardgraves v. State, 61 Texas Crim. Rep., 422.

On question of witness under rule: Heath v. State, 7 Texas Crim. App., 464; Green v. State, 49 Texas Crim. Rep., 645; Smith v. State, 52 id., 80; Powell v. State, 50 id., 592; McCullough v. State, 50 id., 132.

On question of other offenses: Gardner v. State, 55 Texas Crim. Rep., 400; Ware v. State, 36 id., 597; Mason v. State, 31 id., 306; Nixon v. State, 31 id., 205.

On question of declarations of third party: Patrick v. State, 45

Texas Crim. Rep., 587; McAdams v. State, 59 id., 86; Kirksey v. State, 58 id., 188.

On question that court should have submitted conspiracy between prosecuting witness and others to send defendant to penitentiary: Blackshear v. State, 69 Texas Crim. Rep., 113; Smith v. State, 70 id., 62; Coleman v. State, 71 id., 20; Love v. State, 71 id., 79.

On question of motive and court's failure to charge thereon: Berry v. State, 30 Texas Crim. App., 423; Coller v. State, 36 Texas Crim. Rep., 496; Morrison v. State, 37 id., 601.

On question of court's charge in not submitting the issue of accomplice and accessory in his charge on self-defense: Ballew v. State, 48 Texas Crim. Rep., 46.

*C. C. McDonald,* Assistant Attorney General, and *Marshall Spoonts,* County Attorney, and *W. A. Hanger* and *W. P. McLean, Jr.,* and *Lattimore, Cummings, Doyle & Bouldin,* for the State.—Cited cases in opinion.

HARPER, JUDGE.—Appellant was convicted of robbery and his punishment assessed at thirty-five years confinement in the State penitentiary.

The record is very voluminous, and contains some forty-seven bills of exception. We do not deem it necessary to state the testimony at this time, as it will be necessary to state the material part in disposing of the various bills of exception.

The indictment in this case contains six counts, the first two charging appellant with being an accomplice to the robbery; the third charges him with being an accessory, while the other three counts charge appellant with being the principal in the commission of the offense. Only the fourth count was submitted by the court to the jury. It reads:

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present in and to the District Court of Tarrant County, Texas, that one Horace Collins, Jr., in the County of Tarrant and State aforesaid, heretofore, on the 30th day of September, A. D. 1914, by then and there using and exhibiting a firearm, towit, a pistol, and another deadly weapon, towit, an instrument the name, character and description of which is to the grand jurors unknown, did then and there unlawfully and wilfully make an assault upon the person of J. H. Greer, and with said pistol and other deadly weapon, did then and there put the said J. H. Greer in fear of life and bodily injury, and by said assault committed as aforesaid and by putting the said J. H. Greer in fear of life and bodily injury as aforesaid, did then and there fraudulently take from the person and possession of the said J. H. Greer, and without the consent and against the will of the said J. H. Greer, one watch of the value of fifty dollars, said watch then and there being the corporeal personal property of and belonging to the said J. H. Greer, with the fraudulent intent then and there on the part of him, the said Horace Collins, Jr., to deprive the said J. H. Greer, the owner

of said corporeal personal property, of the value of saiu property, and with the intent to appropriate the same to the use and benefit of him, the said Horace Collins, Jr., against the peace and dignity of the State.'

Appellant moved to quash the indictment, first, contending that it does not state that the offense was committed "anterior to the presentment of the indictment." The indictment alleges that "heretofore, on the 30th day of September, 1914." The word "heretofore" necessarily conveys that the offense was committed prior to the presentment of the indictment. The indictment shows that it was presented in open court on the 10th day of October, 1914, and certainly September 30, 1914, is anterior to the presentment of the indictment. In Wilson v. State, 15 Texas Crim. App., 150, it is specifically held that even where the indictment or information is filed on the same date as the alleged commission of the offense, an allegation that it was committed "heretofore" on the date named is sufficient. All that is necessary is that the indictment shall show that the offense was committed prior to the presentment of the indictment, and within the period of limitation fixed by law. Subdiv. 6 of art. 451, C. C. P. Appellant also contends that the evidence will show that the offense was committed on September 17th and not September 30th as alleged. If this was true, and if, in fact, the State was compelled to prove that the offense was committed on the 30th of September, the allegation would in nowise affect the validity of the indictment, but in such event it would only be a case where the evidence failed to support the allegation. However, we do not wish to be understood as holding that it was necessary to prove the offense to have been committed on the 30th of September under the allegation contained in the indictment. Judge White, in his annotated procedure, subdivision 6 of section 343, correctly states the rule to be: "The time when the offense was committed must be proved, but the exact date alleged in the indictment need not be proven. All that is necessary is, that the time of the commission of the offense must be proved, and that the time proved must be a date anterior to the presentment of the indictment, and not so remote as to show that the prosecution for the offense is barred by limitation." Cudd v. State, 28 Texas Crim. App., 124; Arcia v. State, 28 Texas Crim. App., 198; Abrigo v. State, 29 Texas Crim. App., 143; Crass v. State, 30 Texas Crim. App., 480; Shuman v. State, 34 Texas Crim. Rep., 69; Temple v. State, 15 Texas Crim. App., 304. Neither is the indictment duplicitous nor repugnant, because in different counts it charges appellant with being an accomplice, an accessory, and a principal in the commission of the offense. All the various counts are based on the same identical transaction, the robbery of J. H. Greer of a watch. As said by this court in Shuman v. State, 34 Texas Crim. Rep., 69, p. 70, "it is not only allowable but considered the better practice, to set up the same transaction by as many counts as the pleader may deem necessary to meet the various phases which the proof may possibly develop." Keeler v. State, 15 Texas Crim. App., 111; Shubert v. State, 20 Texas Crim. App., 320; McKenzie v. State, 32 Texas Crim. Rep., 568; Pisano v.

State, 34 Texas Crim. Rep., 63; Dill v. State, 35 Texas Crim. Rep., 240; Moore v. State, 37 Texas Crim. Rep., 552; Martinez v. State, 51 Texas Crim. Rep., 584; Robinson v. State, 56 Texas Crim. Rep., 62; Goode v. State, 57 Texas Crim. Rep., 220.

In the second bill of exceptions it is shown that after announcement of ready for trial, and the jury had been selected and sworn in the case, when appellant was arraigned, he moved to quash and set aside the indictment, because the indictment as read was not a true copy of the one served on him. This would be no ground to quash the indictment if the indictment returned into court was valid. The fact that the clerk did not have him served with a true copy of the indictment as returned into court, might be ground for postponement of the case, if appellant had made such motion before announcement of ready for trial. Our statute, article 557, provides that a person shall be entitled to two days after service of copy of indictment to prepare for trial before he shall be arraigned, but it also provides that he may waive the service of copy of indictment. Had appellant moved to postpone the case because he had not been served with a correct copy of the indictment, doubtless the court would have granted the motion. In this case he filed no such motion or made no such request. In fact, the record discloses that the indictment was returned into the Forty-eighth District Court of Tarrant County on the 10th day of October. Thereafter, on October 17th, appellant appeared and filed a motion requesting that this case be transferred to some other District Court in said county, as the said court of the Forty-eighth District was engaged in the trial of civil cases and would not take up criminal cases during the remainder of the term of said court. The transfer was made. This case was not called for trial until November 24th, at which time appellant appeared and announced ready for trial; a jury was sworn and empaneled, when appellant moved to quash the indictment because the copy of indictment served on him was not an exact copy of the indictment returned into court. His acts and conduct would constitute a waiver in law. Certainly the court did not err in refusing to quash the indictment on this ground, and this was the only motion before the court. And it has frequently been held that it is too late after verdict for appellant to raise the question that he had not been served with a true copy of the indictment. White v. State, 32 Texas Crim. Rep., 635; Bonner v. State, 29 Texas Crim. App., 223; Rice v. State, 49 Texas Crim. Rep., 569, 94 S. W. Rep., 1024.

In several bills of exception it is shown that appellant at the time he was called on to announce for trial, moved the court to require the State to elect upon which count in the indictment it would proceed to trial. Again, at the conclusion of the evidence on behalf of the State he again demanded that the State elect upon which count it would ask for a conviction and then again when the testimony was closed the appellant again requested the court to require the State to elect. All these motions were overruled, and appellant cites us to the case of Simms v. State, 10 Texas Crim. App., 131, as sustaining his contention.

It must be admitted that if the Simms case correctly announces the law, the court erred in refusing to require the State to elect upon which count it would seek a conviction, when it rested its case. The Simms case was one in which Simms was charged in one count with being the principal, and in another count with being an accomplice to the crime, and it was held to be error not to require the State to elect. But we do not think it correctly announces the law when the various counts are based on the same transaction, and had never so been held theretofore, nor since the rendition of that opinion. In fact, so far as we have been able to ascertain, the Simms case is the only case wherein it is held that where the various counts in the indictment relate to the same transaction, that the State will be compelled to elect upon which count it will ask a conviction. In this case, or in any other case, if the evidence adduced rendered it uncertain whether appellant was a principal or an accomplice in the commission of the offense, the court would have been authorized to submit the two counts to the jury under appropriate instructions. Various counts are put in the indictment, based on the same transaction, to meet the various phases which the proof may develop, and it is only in a case where the evidence develops there are two transactions that the State will be required to elect upon which *transaction* it will seek a conviction. If the same transaction is charged in different counts, each count alleging a different mode or means of doing the same act constituting the offense, the State will not be required to elect. Smith v. State, 34 Texas Crim. Rep., 123; Willis v. State, 34 Texas Crim. Rep., 148; Dill v. State, 35 Texas Crim. Rep., 240. In Goode v. State, 57 Texas Crim. Rep., 220, this court held: "The rule is well settled that where an indictment charges in separate counts one or more distinct felonies, and the evidence develops distinct transactions, the State should at the request of defendant be forced to elect upon which count or transaction it will prosecute. This rule, however, has no application to a case like the one at bar, where *only one transaction or act* is charged and different counts are contained or inserted in the indictment drawn to meet the possible phases that the testimony may assume." The distinction is thus stated in the case of Moore v. State, 37 Texas Crim. Rep., 552: "We understand the rule to be that the indictment can charge the same offense or transaction in any number of distinct counts and in such case the State will not be driven to election." In this latter case it is stated the rule in the Simms case does not correctly state the true rule of law. In this case the transaction charged was the robbery of J. H. Greer. No other or different offense was alleged. Appellant was on trial for guilty participation in that offense either as a principal, accomplice or accessory, and if the evidence had rendered it certain beyond a reasonable doubt, that he was guilty either as a principal, accomplice or accessory of the offense charged, yet the evidence had not rendered it beyond question whether the person on trial was guilty as a principal or an accomplice, the State would not be required to elect, and the court would be authorized to submit both counts to the jury. It is true that when one is indicted

as a principal he can not be convicted of being an accomplice, nor when charged with being an accomplice he can not be convicted as a principal offender, and this is the very reason why the indictment should contain counts charging in one count that one was a principal, and in another that he is an accomplice. Mr. Branch, in his Criminal Law, section 300, correctly states the law as regards "election" between counts:

"If only one transaction or act is charged, and different counts are contained in the indictment to meet the possible phases that the testimony may assume, the State will not be required to elect. Goode v. State, 57 Texas Crim. Rep., 220, 123 S. W. Rep., 601; Smith v. State, 34 Texas Crim. Rep., 123, 29 S. W. Rep., 774; Willis v. State, 34 Texas Crim. Rep., 148, 29 S. W. Rep., 787; Shuman v. State, 34 Texas Crim. Rep., 69, 29 S. W. Rep., 160; Pisano v. State, 34 Texas Crim. Rep., 63, 29 S. W. Rep., 42; Dill v. State, 1 Texas Crim. App., 278; Dill v. State, 35 Texas Crim. Rep., 240, 33 S. W. Rep., 126; Bink v. State, 50 Texas Crim. Rep., 445, 98 S. W. Rep., 863; Keeler v. State, 15 Texas Crim. App., 111; Masterson v. State, 20 Texas Crim. App., 574; Willis v. State, 55 S. W. Rep., 829; Robinson v. State, 56 Texas Crim. Rep., 62, 118 S. W. Rep., 1037; Moore v. State, 37 Texas Crim. Rep., 559, 40 S. W. Rep., 287; Green v. State, 21 Texas Crim. App., 64, 17 S. W. Rep., 262; Womack v. State, 25 S. W. Rep., 772; Matt v. State, 58 S. W. Rep., 101; Bratt v. State, 41 S. W. Rep., 625; Houston v. State, 47 S. W. Rep., 468; Bynum v. State, 72 S. W. Rep., 844; Vaden v. State, 25 S. W. Rep., 777; Wadkins v. State, 58 Texas Crim. Rep., 110, 124 S. W. Rep., 959; Owens v. State, 35 Texas Crim. Rep., 345, 33 S. W. Rep., 875; Wiggins v. State, 47 Texas Crim. Rep., 538, 84 S. W. Rep., 821; Gonzales v. State, 12 Texas Crim. App., 657; Dalton v. State, 4 Texas Crim. App., 333.

"If different counts, charging the same character of offense, are inserted to prevent a variance, and there is evidence supporting each, the State is not required to elect between such counts. Houston v. State, 47 S. W. Rep., 468; Bynum v. State, 72 S. W. Rep., 844; Wadkins v. State, 58 Texas Crim. Rep., 110, 124 S. W. Rep., 959; Dill v. State, 35 Texas Crim. Rep., 240, 33 S. W. Rep., 126; Armstrong v. State, 28 Texas Crim. App., 526, 13 S. W. Rep., 864; Welhousen v. State, 30 Texas Crim. App., 623, 18 S. W. Rep., 300; Thompson v. State, 33 Texas Crim. Rep., 472, 26 S. W. Rep., 987; Greenwood v. State, 44 S. W. Rep., 177; Gonzales v. State, 12 Texas Crim. App., 663." Not only is this the rule in this State, but it appears to be the universal rule. In the Encyclopedia of Pleading and Practice, volume 10, page 543, it is said: "It is competent to vary the charge by means of several counts, when the offense is the same, for the purpose of meeting the different phases of the evidence, which may be adduced on the trial, and though it is upon the principle of joinder of offenses that such joinder of counts is permissible, it is also said to be unnecessary and improper to allege that the offenses charged are different, nor is it necessary that the pleading should expressly state that the counts are intended to cover the same offense. Where the same acts constitute different offenses, or

where the act charged may be characterized by an unascertained fact, in some cases charging the punishment, they may be charged in separate counts," citing Carleton v. State, 100 Ala., 130; Territory v. Duffield, 1 Ariz., 62; Bridges v. State, 37 Ark., 224; Murray v. State, 25 Fla., 528; Territory v. Guthrie, 2 Idaho, 398; Bell v. State, 42 Ind., 335; State v. Brannon, 50 Iowa, 372; State v. Cook, 20 La. Ann., 145; State v. Flye, 26 Me., 312; State v. McNally, 55 Md., 563; Com. v. Ismahl, 134 Mass., 202; People v. Aiken, 66 Mich., 468; State v. Mallon, 75 Mo., 356; Furst v. State, 31 Neb., 403; State v. Rust, 35 N. H., 441; People v. Adler, 140 N. Y., 331; State v. Surles, 117 N. Car., 720; State v. Doyle, 15 R. I., 527; Fonte v. State, 15 Lea (Tenn.), 715; Newman v. State, 14 Wis., 393. Again it is said: "It appears that an election will not be compelled when the transaction is the same, and the same offense is set out in different modes, or the several counts refer to the same acts and transactions." Butler v. State, 91 Ala., 87; Bennett v. People, 96 Ill., 602; Kemeagar v. State, 120 Ind., 176; State v. Blakesley, 43 Kan., 250; State v. Green, 66 Mo., 643; Armstrong v. People, 70 N. Y., 38; State v. Phillips, 104 N. Car., 786; Searles v. State, 6 Ohio Cir. Ct. Rep., 331; State v. Crawford, 38 S. C., 330; Porath v. State, 90 Wis., 253; United States v. Dickinson, 2 McLean (U. S.), 325.

If on the trial it should appear that the counts are based on different transactions, an election should be required as to which transaction the State will seek a conviction when that fact is developed. Even if there is only one count in an indictment, yet evidence should be admitted of different transactions in a case of felony, the State can be and should be required at the close of its testimony to state on which transaction it will rely, for a defendant should not be required to meet only one transaction, but these are the only instances in which the State may be required to elect. We have discussed this question more at length than is necessary, but we have done so because appellant seems so confidently to rely upon the case of Simms v. State, supra, which has, heretofore been criticised, and many times indirectly, if not directly, overruled. In no event would this question present error in this case, for the court submitted only one count in the indictment to the jury, and all evidence admitted would have been admissible on that count. Judge Davidson aptly and tersely states the correct rule of law in Smith v. State, 34 Texas Crim. Rep., 123: "It is urged as error, that the State did not elect upon which count the prosecution would be maintained. This was not required in this case. This court has frequently suggested the practice of including different counts in indictments, so as to meet every phase of the transaction which might be developed by the testimony upon the trial. But if an election had been necessary, appellant can not complain because the court submitted the fourth count only for the consideration of the jury, and this was tantamount to an election by the State." In this case the court submitted only the fourth count in the indictment.

In three bills of exception it is shown that appellant excepted to the

action of the court in not-permitting him to propound to the jurors on their examination certain questions. It is shown that appellant asked a juror if he had any aversion to the defense of alibi, and when the juror answered no, and that he did not understand the meaning of the term, appellant's counsel desired to explain the meaning of the term of alibi. This the court would do in his charge to the jury. He also desired to ask, "Have you any aversion to the defense that a man is not connected with the crime either by illegal act or omission, and that he is not a principal, accomplice or accessory?" The court did not err in refusing to permit such question to be propounded. It was incumbent on the State to prove appellant's guilty connection with the crime ·charged, and not on him to prove his innocence. A plea of "not guilty" places the burden on the State, and certainly no one could have prejudice against one proving that he was in no way connected with the crime, unless he had bias or prejudice against the person on trial. And the fact the juror had no bias or prejudice against appellant was permitted to be inquired into. It is also shown that appellant asked a juror, "Do you believe in the enforcement of the law?" and "if he would be governed by the charge of the court." Both questions being answered in the affirmative, he then desired to ask if the court stated the law to be a certain way, did his conscience tell him that it is proper law, and would he enforce it. Each juror is required to take an oath that he will be governed by the law as given him in charge by the court, and the court did not err in sustaining the objection made. He also desired to ask a juror if the fact that the attorneys for the State were well known in the county, while the attorneys for the defendant had been in the county but a comparatively short time and are not well known, would have any influence on him. If the appellant had desired to show that the relationship between any of the jurors and the attorneys was such that it might influence them, he should have been permitted to do so, but the question propounded would have no such bearing. If an attorney has so conducted himself that the jurors of the county as a whole have respect and regard for him, yet there has been no dealings between the juror and the counsel, nor association, that would influence his verdict, certainly the fact that the attorney bore a good reputation in the county among all the jurors would not disqualify them and each of them from sitting in a case in which he was of counsel. And the fact that defendant's counsel, by not having lived in the county so great a length of time as to have established so favorable a general opinion, would not disqualify the jurors. Always all legitimate questions which seek to elicit whether or not a juror has bias or prejudice against the person on trial should be permitted, but the fact that a juror might believe that all laws should be enforced, and that he had antipathy to certain crimes such as robbery by firearms, burglary of private residence in the night-time, rape by force, etc., would not disqualify them as jurors. It is antipathy toward the person on trial which disqualifies—the fact that their feeling is such that they can not give him a fair trial and do him justice. This country is a republic, and its laws are

enacted by the people, or rather their chosen representatives, and it is the fact that public sentiment had crystallized into thinking such acts should not be permitted, which results in the enactment of laws prohibiting and punishing the act. And that public sentiment thinks certain acts more grave than others is reflected in the laws—the punishment being more severe. There is no law-abiding citizen that has not, to some extent at least, a prejudice against the crime of robbery by the use of firearms. They all think it wrong, and one who commits the crime should be punished. But this does not prevent such person being a fair and impartial juror in passing on the fact of whether or not the person on trial is guilty of such an offense, unless he has bias or prejudice against such person. Article 692 of the Code of Criminal Procedure names the grounds for challenge for cause, and any and all questions which would show or tend to show that either of the grounds named existed should be permitted, but as the questions propounded would have no tendency to elicit information bearing on the grounds named by the statute, and would have no legitimate bearing on the issue of whether such jurors would be competent or incompetent to try the case, these bills present no error.

In another bill it is shown that some of the jurors during the trial propounded questions to some of the witnesses, when appellant's counsel approached the court and asked him to instruct the jury that they should not propound questions to the witness. The court in approving the bill states that when counsel came to him, he told him if he objected to the jurors asking further questions, the court would sustain the objection, and instruct the jury they must not do so, but counsel decided not to make such objection for fear that it might prejudice the interests of his client. As qualified the bill presents no error.

When the witnesses were sworn, the court excused Tom Blanton, county detective; Tom Wrenn, city detective, and John Connelly, chief city detective, from the rule, over objection of appellant. The court apparently did so on the ground that all officers are entitled to be excused from the rule. This we do not think correct—it is only officers of the court who are necessary to the transaction of its business who have a right to be excused. Officers who have no connection with the court should be treated as other witnesses. They are entitled to no greater consideration than the witness who is not an officer. However, the trial court is granted a discretion in the matter of excusing witnesses from the rule, and the record must disclose that the court abused this discretion before this court will be authorized to review his action in this respect. While this bill shows that at the time the witnesses were sworn, the defendant demanded that the above named witnesses be placed under the rule, the record does not show that when they were called as witnesses appellant offered any objection to them testifying, reserved no bill of exception to the court permitting them to testify. To bring this question before us for review, the record should disclose that when called as a witness, the appellant objected to him being used as a witness and to him being permitted to testify; a bill of exception

should be reserved, wherein should be recited the testimony of the witness, or so much thereof as appellant should deem hurtful to him, and state how and in what way such testimony and action of the court was an abuse of the discretion confided in the court by the laws of this State. This question was thoroughly discussed in Powell v. State, 50 Texas Crim. Rep., 592, and the rule governing such matters correctly laid down.

A number of bills of exception were reserved to the action of the court in admitting testimony relative to the finding and identification of a piece of iron, called an ice-pick in evidence. We do not deem it necessary to discuss these bills separately, but will dispose of them all jointly. Marion Long and J. H. Greer both testify to being assaulted and robbed by the same parties at the same place on the same night, but a short time intervening between each robbery. Marion Long testifies that when Greer was being robbed, the persons committing the crime were frightened away by his sister being awakened in the house and calling. That as the robbers fled, he pulled the bandage from off his eyes and saw them fleeing; that they fled up the street leading by Mr. Zane Cetti's house; the next morning in the yard of Mr. Cetti the ice-pick in question was found. Witnesses were introduced showing the disposition and custody of the ice-pick until the trial. This evidence was admissible and necessary to show the ice-pick was in the same condition when offered in evidence as when picked up in Mr. Cetti's yard the morning after the robbery. The ice-pick thus found and produced on the trial was identified as an ice-pick kept at appellant's house by Messrs. Buckalew and Fowler. In fact, appellant himself testifies that while he could not positively identify the ice-pick found as the one made by him and carried home, it resembled the one he had at his home, and he would not say whether or not it is the same one. His mother also testified that it looked like the ice-pick appellant had brought home and kept there for some time, but she says it had been stolen some two weeks before the robbery. The ice-pick was of peculiar make, and Mr. Buckalew says he had a talk with appellant about it when at his house, and appellant told him he had made it; it was peculiar in its shape, and he had never seen another like it. Mr. Fowler delivered ice at the Collins home, and says: "I remember the pick at the Collins home was a pick that had not been trimmed down very neat. It was a rough piece of work. I mean by that, the head of it had not been trimmed down. The shank of the pick looked like a piece of a drill had been put in there and trimmed down. As well as I can remember the pick, the pick shown me is just exactly like the pick I saw in the Collins home. If the pick shown me is not the one in the Collins house prior to the Greer robbery, it is one just exactly like it. This pick was there all the time up until the time when it was not there. When I first missed the pick, it must have been several days after the Greer robbery." Greer, on the night he was robbed, was struck over the head with some character of instrument. Dr. Gray testified: "There were six scalp wounds here. One in front, and then they ranged back; then

he had this bruise or swollen up place there on this part of his neck; it was on the left side of the neck, at the base, here, and it was swollen, puffed up. The skin was not cut through. There were six wounds on the scalp. This is one here. It was about one or one and a half inches long. The others were smaller and ranged back towards the back part of the scalp. There is evidence of these wounds on the head and neck at this time. There are scars there. You can feel the scar there. The scars are there yet. The wound in the front was the most serious. The others were not so deep; not so large. The one in front seemed to cut down to the skull." Around this ice-pick when found was wrapped a piece of tape; tape of the same character and kind was found in the room occupied by appellant. The identity of appellant as one of the parties who assaulted and robbed Mr. Greer was a contested issue in the case, and all this testimony would tend to identify appellant as one of the parties who committed the robbery, and as the pick is shown to have been one made by him and carried home; was wrapped with tape of the character found in a drawer in his room, and was such an instrument as could have inflicted the wounds made on Mr. Greer's head, the court did not err in admitting the testimony, even though appellant was not present when the articles were found, nor present when it was delivered to the officers.

Marion Long testified he was robbed by three men, and says: "One of them grabbed hold of me to turn me around. The other one had a gun on me. I mean by a gun, a sixshooter. I call a sixshooter a gun. It was a dark gun that was held on me, I know that. The man that held the gun on me was about four or five steps from me. When he held the gun on me, he sort of ducked down like that (indicating). The pistol was pointing towards me. When they turned me around and faced me towards the street, they said, 'Let's go sit down,' and I went and sat down. When I went to sit down, the man that had the gun on me walked ahead of me and the other two fellows. As I approached the place where I sat down, one of them was sort of to the side of me and the other to the back of me. About this time they went through me. About the time they robbed me, I was about ten feet from the front door. They took off of me a stickpin, a ring and a watch, but I got the watch back later. The stickpin was a horseshoe stickpin with diamonds in it. The value of that stickpin was $400. They took a diamond ring off of me. That diamond ring was of a value of $600. I afterwards got the watch back. After they went through me, they said, 'Let's go and sit down'; then we went south on the porch. When I first went up there, the man that first showed up showed up from the south. There was a swing and two chairs and a settee to sit down on in that part of the porch. I sat on the chair. When I sat on the chair, two of them sat on the settee right to the north of me and the other one sat three or four steps out to the right in front of me in a chair. The man that had the pistol preceded me as I walked down to sit down in a chair. When I sat down, the man who had the pistol was the one that sat right in front of me. He was

about four steps from me. The other two men were on the settee right to the left of me; that is, right to the north of me; I could have touched either one of the two. After I sat there about forty-five minutes they stood up and searched me again and tied my hands behind me and blindfolded me. The two that did this was the two that sat right to the left of me. The man that had the gun did not help blindfold me. He was still sitting in front of me. I do not know what he had done with his gun. The man sitting down in front of me whispered with the other two men. I could not hear that and one of them said, 'Let's tie his hands behind him,' and the other one says, 'No,' or something to that effect, and they talked there and whispered a while. I afterwards found out the reason why they didn't was because their handkerchiefs had some initials on them. One of them says, 'It has got my initials on it,' and the one that was sitting right in front says, 'Oh, that don't make any difference, they won't catch us anyway.' They stood me up then and two of them tied my hands behind me. One of them tied a handkerchief around my eyes, one of the same two that stood me up and tied me. They then laid me down there in the swing. The swing is about four and a half feet long. I lay there something like eight or ten minutes. I was lying on my left side and had my head over the end of the swing. My head was handing down. The party sitting right at—that had been occupying the chair in front of me says, 'Son, how are you resting?' I said that my head was hurting, and I wished they would move me or let me sit up a while. They never said anything, but these two that were sitting right to the north of me then walked over and put a pillow under my head and put one under me. I was blindfolded all that time. I remained there something like thirty-five or forty minutes after that time. While I was lying there blindfolded I heard a cab drive up in front of the house, I mean by that, a horse and carriage. I judged from the sound that it stopped in front of the house. After it stopped, one of those fellows got up and went out there and said something. I could not hear what it was; they were there about a minute, or maybe not quite that long, and they turned around and went back south on Henderson to Pennsylvania. I mean by one of those fellows, one of the three that was on the porch. He went out to the front where this vehicle was and talked to them. I heard some tone of voices out there but could not hear what they were saying. The fellow that went out there came back and came over to where I was and pulled my watch out of my pocket and looked to see what time it was, and says, 'It looks like he won't never come.' Well, we stayed there about fifteen minutes and they came over there for a second time and pulled my watch out of my pocket again. And in about ten minutes, why, then, Mr. Greer he walked up on the porch. When he did that, they rushed up to him and says, 'Be quiet.' And he asked them what they wanted, and they stood there about a minute and one of them says, 'Be quiet.' He said, 'Well, what do you want?' They told him three or four times to be quiet, and he said, 'What do you want?' He said, 'I will give it to you.' One of

them hit him then. I know they hit him because I heard the lick. Well, after I heard the first lick, I heard them hit him again before he hit the floor, and after he hit the floor, they hit him not less than six times. I know they hit him that many times because I heard the licks that they hit him. Just about the time or just after they hit him, one of those fellows slipped over there to me and says, 'Be quiet.' He said, 'If you move or make any noise, or try to do anything, we will do you the same way.' My sister was sleeping on the sleeping porch on the north side of the house, and she jumped up and says, 'What is that down there?' She hesitated a minute and then she called for help, and my father jumped up and ran downstairs. I then heard these fellows break and run, and this fellow that was standing by me then went back over there and passed him, and as he passed him, hit him again. I mean by that, as he passed Mr. Greer; I heard the lick. I know Horace Collins, the defendant. I have known him about six or seven years. I became acquainted with him at the Sixth Ward School when we went to school there. I also afterwards knew him when he came out there to the house and drove for the folks out there. I mean that he drove the automobile. He was out there from the first of September until the first of December of the year 1911. I was not around the place much while he was driving the car out there. I was off at school. Collins was there when I was off at school. He had been there about two weeks when I left for school. The family called me 'Son' when I was around home.

"As I lay on the gallery there that night a man said to me, 'Son, how are you resting?' I believe I would know Horace Collins' voice. Q. In your judgment, whose voice was that which said, 'Son, how are you resting?' there that night? Mr. Wood: We object to that as immaterial and irrelevant, and the opinion of the witness, and incompetent. The Court: I sustain the objection to the question as asked. They may put it directly, however. Mr. Spoonts: Q. I will ask you to state whether or not you know whose voice it was that made use of that remark that night? A. Well, I don't positively know who it was. Q. Well, now, in your best judgment, whose voice was it? Mr. Wood: We object to that. The Court: I overrule the objection. Mr. Wood: Note the exception. A. In my best judgment, that voice was the voice of Horace Collins.

"At the time Collins was employed at my home as a chauffeur or driver, the family always spoke of me as 'Son.' They called me that altogether—all the family. They often called me that in the presence of the defendant, Horace Collins. That was the usual name used by members of the family towards me."

Appellant objected to the witness being permitted to testify, that in his best judgment the voice he heard was the voice of Horace Collins, appellant. As the identity of the parties who committed the robbery was a sharply contested issue, the testimony was admissible, it being held in Price v. State, 35 Texas Crim. Rep., 501, that "it is competent for a witness to testify that he recognized the defendant by his voice, and

the witness may state his impression on that subject." See also Davis v. State, 15 Texas Crim. App., 594. The case cited by appellant does not support his contention. In that case it was not held that the testimony was inadmissible, but it was simply held that where the parties were strangers, such evidence of identity alone was insufficient. This case does not rest upon this identification alone, but Mr. Greer swears positively he recognized appellant when he was robbed.

Appellant also objected to the testimony that a pistol was found at his home under his pillow. It is seen by the testimony above copied that a pistol was used in effecting the robbery. One of appellant's witnesses, Will Kidwell, testifies that appellant's pistol was used in effecting the robbery, although he says appellant was not present when the robbery was committed, and identifies the pistol found under the pillow of appellant's bed and introduced in evidence as the pistol used on the night of the robbery by certain marks he says were placed on it the night of the robbery. Under such circumstances there was no error in admitting the pistol in evidence, nor testimony of the place where it was found.

The next question presented in bill No. 16 presents, to our mind, the most difficult question in the case. Appellant had placed Mrs. Greer, the wife of the assaulted party, on the stand as a witness in his behalf. On cross-examination the State was permitted to prove by her that appellant some time prior to the robbery had endeavored to get Mrs. Greer to place some powders in the coffee of the prosecuting witness, her husband, and had told her where to go and get the powders. This was evidently offered to show that appellant had, prior to the robbery, sought to have Greer killed by administering to him poison in his coffee. That one desired to have another killed, or had sought on a prior occasion to take his life, would hardly tend to prove a motive for robbing him, and if there was no error in admitting the testimony, it must be sustained upon some other theory than to show a motive to commit the robbery. That one desired the death of another would hardly be motive to merely rob him. However, we think the evidence admissible on another phase of the case. The evidence of Mr. Long shows, that in so far as he was concerned, robbery was the only motive or incentive actuating those who committed the robbery. But not so when they come to deal with Greer, the prosecuting witness in this case. The record shows they went to the home of Greer, remained in a vacant house adjacent thereto, until they saw someone approaching the Greer home; they then went to the front porch, and as Marion Long approached they threw a pistol on him and robbed him, but they did him no further violence, merely blindfolding him, etc., placing him in a lawn swing; they then remained on the porch for some forty or forty-five minutes, and from the remarks demonstrated they were waiting for someone. If burglary of the house had been the sole object of those marauding parties, they could have entered the house during this three-quarters of an hour they were waiting there. When Greer finally approached his home, how did they then act? Mr. Long's testimony as

hereinbefore copied demonstrates this, and the testimony of Mr. Greer is, in substance, the same, he further testifying:

"I could see some of the parties that were participating in the robbery. I recognized one or more of them. The party that I recognized was in the shadow at the time that I first saw him. He moved afterwards. He passed rather around the end of the table sitting on the porch. As he passed, he had to pass through the ray of light that came from out of the house. As he passed through that, I recognized him. The man that I recognized and who held the gun was Horace Collins, and the other man I think I recognized as Pat Doyle. I could not recognize the third man. When I say one of the parties was Horace Collins, I mean the defendant in this case. He was the man who held the gun. He had that gun with him as he crossed around there and went through the ray of light. He had it all the time. It was a very large gun and black."

It is seen by the testimony of Long and Collins that in dealing with Greer the evidence raises the issue that their motive was to do more than rob him—to murder him as well, and probably would have done so if the noise made when they struck Greer and felled him to the floor had not awakened his wife, who demanded to know who was down there, and who awoke her father. The robbers, whoever they were, left upon the approach of those from the inside of the house. Now, who of all men does the record disclose, outside of the evidence of desiring the powders to be administered to him, would have a motive to murder Greer? According to the State's theory of the case, and there is evidence to support it, while Collins was working for Mr. Long (the father of Mrs. Greer) Mrs. Greer had formed an attachment for him. Upon discovering this, Mr. Long had discharged him. The relations of appellant and Mrs. Greer did not cease, but there is evidence that would authorize a jury to find that Mrs. Greer instituted a suit for divorce at least with the knowledge and consent of Collins; that when the divorce suit was dismissed, Collins tried to get Mrs. Greer to flee with him, and this was frustrated by Greer and a brother of Mrs. Greer; he had her clothing, and some of her jewels in his possession, ready to flee. Many other circumstances are shown by the State that appellant desired the wife of Greer, she being a rich woman, and heir to other property at the death of her father and mother. A murderous assault was made on Greer on the night of the robbery—the identity of the person making the assault being a contested issue. Appellant introduced Kidwell as a witness, who testified that he and Pat Murphy and Beeson had committed the robbery, and made the assault on Greer. No reason is shown why these three men, or either of them, should have treated Greer other than as they did Long if robbery was the sole object. He also introduced his mother, who testified to a complete alibi for him—she saying that he was at home sick on the night of the robbery, and said during the very hours the robbers were at the Greer home she had waited on him twice, administering to him medicine for his ailment. Appellant also testifies to the alibi. Marion Long for the State had testified

to recognizing appellant's voice when he spoke to him; that he called him "Son," a nickname none used except his people at their home. Greer testified that he saw and recognized appellant and swore positively to his identity. With the issue thus made, the question would naturally arise who would have the motive to make the murderous assault on Mr. Greer. If there was no motive on behalf of appellant to kill and murder Greer, it would have a tendency to support his alibi; if there was evidence to show a motive why he desired the death of Greer, this would be a circumstance admissible in evidence on the question of his identity as the person who made the deadly assault. In McKinney v. State, 8 Texas Crim. App., 626, this court held: "Motive is a minor or auxiliary fact, from which, when established in connection with other necessary facts, the main or primary fact may be inferred. The inquiry is, does it fairly tend to raise an inference in favor of the existence of the fact to be proved? If it does it is admissible, whether such fact be innocent or criminal in its character." In Hart v. State, 15 Texas Crim. App., 202, it is held: "The prosecution had the right to offer any evidence tending to prove a motive for the commission of the crime." In Dill v. State, 1 Texas Crim. App., 278, and Somerville v. State, 6 Texas Crim. App., 433, it is held: Where it is shown that a crime has been committed, and the circumstances point to the accused, the facts tending to show motive, although remote, are admissible. In Powers v. State, 23 Texas Crim. App., 42, evidence of prior difficulties is held to be admissible, the trial court stating that he admitted such evidence to show motive, and this court held: "To our minds this explanation is entirely satisfactory, and shows sufficient reasons for the admission of the testimony, the object of which was to establish the probable feelings of defendant toward deceased, and to discover and illustrate the motive of his actions at the time of the homicide." In Martin v. State, 30 S. W. Rep., 222, this court held: "Where the State's theory is that a certain person participated in a crime, and this is denied by the defendant, evidence of motive for being there is admissible." See also Medina v. State, 49 S. W. Rep., 380; Hubby v. State, 8 Texas Crim. App., 597; Duebe v. State, 1 Texas Crim. App., 159; Moore v. State, 31 Texas Crim. Rep., 234; Powell v. State, 13 Texas Crim. App., 244; Taylor v. State, 14 Texas Crim. App., 340; Dubose v. State, 13 Texas Crim. App., 418; Hart v. State, 15 Texas Crim. App., 202. In Martin v. State, 28 Texas Crim. App., 364, it was held where it became necessary to show motive, intent or knowledge, the State may prove such acts, conduct or declarations of the accused as tend to establish such facts, although such proof may show that the defendant has committed a distinct crime from that for which he is being tried. The evidence in this case tending to show that the persons who committed the robbery, also desired the death of Greer, and made a violent and murderous assault upon him, would render admissible evidence that on a prior occasion appellant had sought the death of Greer by having poison administered to him in his coffee—thus shedding light on who probably would make an assault of the character that was made as

shown by the evidence in this case. The defendant's evidence would tend to show that Murphy, Beeson and Kidwell made the assault and committed the robbery while he was at home in bed sick. The State's evidence is that appellant, Pat Murphy and Pat Doyle committed the assault and committed the robbery; a motive being shown why appellant would more violently assault Greer than Long, in that, if the State's theory is correct, he desired his death that he might marry his wife. No such motive is shown or suggested on the part of the three whom the testimony of appellant would show committed the offense, consequently all evidence which tends to show motive on the part of appellant, that he desired Greer's death, and that the assault on Greer was one calculated to accomplish that object, while the assault on Long was not, was admissible. This evidenced that the parties committing the robbery had animosity towards Greer and desired his death, in addition to the desire to rob him. Wharton's Crim. Ev., 9th ed., sec. 48; Underhill on Ev., sec. 58; Abbott Trial Brief, Crim. Trials, sec. 598; Jones on Evidence, sec. 145.

The appellant having testified as a witness in his behalf, it was permissible to ask him if there were not other indictments pending against him charging him with other and different felonies as affecting his credit as a witness, and when he answered in an evasive way, it was not error to permit the indictments to be introduced. The court properly limited this testimony in his charge to the jury, therefore it was not necessary to give the special charge requested on this issue.

Appellant introduced Kidwell to prove that he, Pat Murphy and Harry Beeson committed the crime with which appellant was charged, and for which he was being tried, and the witness so testified. The State in rebuttal of this testimony introduced Brown Harwood, who testified that he heard a conversation between Kidwell and W. P. McLean, in which Kidwell had told McLean that he, Pat Murphy and appellant had committed the crime. At appellant's instance the court instructed the jury:

"Some evidence has been permitted to go before you as to some conversation between W. P. McLean, Jr., Brown Harwood and John Connelly, and witness Willie Kidwell at the Tarrant County jail and between John Connelly and Brown Harwood at other places.

"You are charged that you can not consider what was said in said conversations by McLean, Harwood and Connelly in any manner nor for any purpose against this defendant, Horace Collins.

"And as to any statements made by said Willie Kidwell in any such conversations, you can only consider the statements of said Kidwell so made to them, if you believe they were made as affecting the credibility of said witness Kidwell, as a witness, and for no other purpose."

The testimony was admissible to impeach the witness, and the court did not err in so holding. And to further impeach the witness Kidwell when he denied making a written statement, and said he did not sign same, and could not write his name, there was no error in permitting

the State to introduce witnesses to prove that he did sign a statement, and there was no error in permitting the signature which the witnesses say they saw him write to be introduced in evidence. This went to the credit of the witness Kidwell. No part of the written statement was introduced, but only the signature.

As J. R. Warren testified he recognized the voice of appellant in hearing him talk over the telephone, there was no error in permitting him to testify what he heard appellant say in the conversations over the telephone. In addition to the authorities heretofore cited on this question in the Encyclopedia of Evidence, volume 6, page 923, it is stated: "Voice is a competent means of identification if the witness had any previous acquaintance with the person identified. It is sufficient that the witness has heard such person's voice but once previous to the time in question." Com. v. Williams, 105 Mass., 62; Brown v. State, 76 Pa., 319; State v. Howard, 92 N. C., 772; Deal v. State, 140 Ind., 354; State v. Hopkirk, 84 Mo., 278; State v. Shinbom, 46 N. H., 497; Patten v. State, 117 Ga., 230; Andrews v. Com., 100 Va., 801; Givens v. State, 35 Texas Crim. Rep., 563. The length of time one was acquainted with the person whose voice he claimed to recognize would go to its weight and not to its admissibility.

Appellant contends that by the evidence of Marion Long, Mr. Greer and Mrs. Greer and other witnesses he raised the issue that there was a conspiracy existing on the part of the Longs and the prosecuting witness Greer to send him to the penitentiary, and the court should have given his special charge on this issue. Such a charge would have been upon the weight to be given certain testimony, and the court did not err in refusing to give it. Evidence that such a conspiracy existed was admissible as affecting the credit to be given the testimony of the witnesses Long and Greer, and this would be a matter of argument for the jury. Counsel for appellant doubtless on the trial in their argument contended that the evidence showed such a conspiracy, and, therefore, the jury should pay but little attention to the fact that Marion Long and J. H. Greer identified him as one of the persons making the assault and committing the robbery, but it would have been improper for the court to have instructed the jury what weight they should give such testimony. Doubtless counsel for the State insisted there was no such conspiracy, and it would be just as reasonable for the State to insist that the court should have instructed the jury that if the conspiracy was not proven what weight the jury would give to the testimony of these witnesses.

The charge on alibi as given by the court has been frequently approved by this court, and the criticism of this paragraph of the charge presents no error. Gallaher v. State, 28 Texas Crim. App., 247; Walker v. State, 6 Texas Crim. App., 576; Williams v. State, 54 Texas Crim. Rep., 30; Crowell v. State, 56 Texas Crim. Rep., 480; Morrow v. State, 56 Texas Crim. Rep., 519; Mass v. State, 59 Texas Crim. Rep., 390, 128 S. W. Rep., 395; O'Hara v. State, 57 Texas Crim. Rep., 577, 124 S. W. Rep., 95.

The charge on principals aptly states the law as applicable to the facts in evidence. There is nothing in the evidence to show that appellant may have been present at the time of the commission of the offense, yet had no participation in the crime. The evidence and all the evidence shows that if appellant was present he was a very active participant in robbing both men.

There was no necessity for the court to give the charge on want of motive as requested by appellant. He offered no evidence that he had no motive further than he had borrowed considerable money from Mrs. Greer, and that he could probably continue to borrow money from her. But the fact that he made arrangements to borrow $350 from Mrs. Greer and the prosecuting witness, her husband, had stopped the payment of this check, and any others that might be drawn in his favor or in the name of his mother, was a motive for appellant to make the assault that was made. There is ample evidence for the jury to find a motive for the crime as committed, and the court correctly refused the special charge requested on the issue of motive.

As the court did not submit the issues of accomplice and accessory, but specifically withdrew such counts from the consideration of the jury in his charge, the court properly refused the charge defining accomplice and accessory, and as hereinbefore stated, he fully and sufficiently defined who are principals as applicable to the evidence in this case.

The charge asked by the defendant that unless the jury believed the testimony of Kidwell was wholly and totally false, they would acquit appellant. Kidwell was a witness called by defendant, and his testimony would exonerate appellant from participancy in this crime, but it is not proper for the court to instruct the jury what weight they shall give to his testimony. This, under our law, is left to the jury.

As the written statement of Kidwell was not introduced in evidence, there was no necessity for the court to instruct the jury not to consider it. The signature of Kidwell to the statement was admissible as tending to impeach his testimony wherein he stated he could not write.

There was no necessity for the court to instruct the jury in regard to the testimony of Mrs. Alice Greer. She had been called as a witness by appellant, as he had a right to do, and her testimony was entitled to be weighed by the jury the same as any other witness, and the court acted properly in refusing the special charge singling out her testimony. The court in approving the bill says: "The above bill of exceptions as to the requested charge and the refusal of the court to give same is correct, but the remainder of the bill containing the statement that any side bar remarks were made is not true nor correct and the only information the jury received was from the admitted testimony of the witnesses and the argument of counsel." As thus qualified the bill presents no error.

As the court submitted only the fourth count in the indictment, which charged appellant with the commission of the offense, naming no other person, there was no necessity to give a charge that if the jury had a reasonable doubt as to the presence of either Pat Murphy, Pat Doyle or

Steve Lewis at the time of the commission of the offense to acquit appellant. The count submitted to the jury merely charged appellant with the commission of the offense, and the fact that the evidence tended to show that Pat Murphy and Pat Doyle alone were present assisting him would present no variance.

The other special charges requested were fully covered by the court's main charge in so far as they are the law of the case.

The State's evidence would render appellant guilty of the crime charged under aggravating circumstances, and it is not surprising, if the jury believed the State's evidence, they would assess a heavy penalty. The defendant offered proof of an alibi. If the jury had believed such evidence or had a reasonable doubt of its truth, appellant was entitled to an acquittal. A jury must be empaneled under our law to pass on the facts in a felony case—it can not be waived. They are made the judges of the credibility of the witnesses and the weight to be given the testimony of each witness. We are not authorized to take this function from them and substitute our judgment for theirs if the evidence offered by the State makes a case. In this case, the evidence does do so, and there being no error pointed out in the many bills of exception filed, each of which we have carefully read and reviewed, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### June 25, 1915.

HARPER, Judge.—Appellant in this motion for rehearing assigns six grounds why he thinks we erred in affirming the judgment, and why the rehearing should be granted, and the case reversed. We will discuss only these six, for in the original opinion we acted on each question raised, and appellant complains of us for so doing. Of one of his bills filed he says: "This was not seriously insisted on in the trial court. It was really jocularly done." If so, we can not understand why counsel took the trouble to make and secure the approval of the bill and file it. We have before this been criticised for not passing on each bill in the record in detail, but never before for taking the care and trouble to act on each bill presented. Hereafter we hope counsel will mark those he intends "as a joke" and we will omit discussion of them. We have said this much as a reason for discussing at this time only the six grounds in appellant's motion, instead of again reviewing the entire record.

His first contention is that we were hypercritical in holding that he did not ask for a postponement of the trial, but the motion filed was a motion to quash the indictment. The motion reads: "Now comes the defendant and, after arraignment upon the indictment and which has just been read to the jury, and before pleading thereto, objects to going to trial upon said indictment, and moves the court to quash and set aside the same because said indictment is not a true original of the certified copy by the district clerk of Tarrant County, Texas, served

on him." If this is other than a motion to quash the indictment we can not understand the language used. And in approving this bill the court states: "The above bill of exceptions is examined, found correct and approved with the explanation, however, that both the State and defendant had announced ready for trial, the jury had been selected and sworn in the case and the indictment read to the jury; the defendant when called on to plead to same declined to do so for the reasons set forth in the above motion." When one accepts a bill as qualified by the court in approving same, he can not afterwards contend that the qualification is incorrect. (Hardy v. State, 31 Texas Crim. Rep., 289; Levine v. State, 35 Texas Crim. Rep., 647; Brown v. State, 32 Texas Crim. Rep., 119; Boyett v. State, 2 Texas Crim. App., 93; Blain v. State, 34 Texas Crim. Rep., 448.) If the language used in the motion to quash the indictment could be construed into a motion to postpone the case until another copy of the indictment was served on him, certainly he could not announce ready for trial; plead to the indictment when arraigned, select a jury and have it sworn, and then when the indictment was read to the jury, refuse to plead because the copy of the indictment served on him was not a literal copy of the indictment returned into court. There was simply a failure to attach the sheets correctly together, the first page being placed last, but each count in the indictment was correctly copied in the copy served on appellant. If one by his acts and conduct could at any time be held to have waived service of copy of indictment, certainly appellant did so in this instance.

The next contention is, that the case of Simms v. State, 10 Texas Crim. App., 131, correctly enunciates the law, and the numerous decisions cited to the contrary are erroneous. This contention has often been made and as often overruled. The authorities are so numerous and harmonious on this question we will not take the trouble to cite authorities other than those cited in the original opinion.

In his original brief appellant contends "the court erred in refusing to permit counsel to ask each and every venireman as to their bias or prejudice against his main defense as shown by bills of exceptions Nos. 5, 6 and 7." In his motion for a new trial it is one of the bills on this question that he says was "jocular" and not seriously contended for even in the trial court, but in the motion for a new trial he says, "The point, and only point, we insisted on was the one" in which he asked Mr. Gilbert: "Have you any prejudice to the defense of alibi?" The witness answered "No." He then propounded the question: "Have you any aversion to the defense that a man is not connected with the crime by illegal act or omission, and that he is not a principal, accomplice or accessory?" The court declined to permit him to ask this question. Appellant now says this is the instance in which the court erred and the only one relied on. The trial court must have and exercise some discretion in controlling the examination of jurors, or trials would be almost endless. However, the examination should be allowed to be broad when its purpose is to show that an opinion on the merits

of the case has become fixed in the juror's mind, or that he entertains bias or prejudice against the person on trial. The question to which the objection was sustained would bear no relation to these matters and there was no error in the ruling of the court.

The next contention is that the court erred in permitting the witnesses Blanton and others named to remain in the courtroom. Appellant admits that the cases hold that for him to have properly presented this matter for review, he should have objected at the time the witness was offered, and the objectionable part of his testimony contained in the bill, but says "these are absurd technicalities." We do not think so. The trial court is possessed of discretion in this matter, and if his ruling worked injury to the appellant it should be pointed out in what respect the testimony did so, otherwise we can not hold that he abused his discretion in the premises. The facts must be presented to us— not an abstract proposition.

Appellant next insists that it was error to permit the testimony that appellant had sought to have powders administered to Mr. Greer, and argues at great length that this was not admissible on the issue of motive. This was unnecessary as we held in the original opinion that it was not admissible for that purpose, but was admissible on the issue of identity of appellant as the person who at the time of the robbery made the murderous assault on Greer. And all the text-books so hold, in addition to the decisions of our own court. Mr. Wharton, in his work on Criminal Evidence, says in section 34: "Evidence of collateral offenses becomes relevant to the principal charge when evidence thereof will serve to identify the accused as the person committing the offense for which he is on trial," citing authorities from almost every State, among them being one decided by this court. (Satterwhite v. State, 6 Texas Crim. App., 609.) In this case Judge White held: "Evidence of independent crimes is admissible when it is necessary to establish identity or in making out the guilt of the defendant by a chain of circumstances connected with the crime for which he is charged, citing Gilbraith v. State, 41 Texas, 569; Speights v. State, 1 Texas Crim. App., 551; Persons v. State, 3 Texas Crim. App., 240. As shown in the original opinion this evidence tended to identify appellant as the person who committed the assault at the time of the robbery. In Wright v. State, 56 Texas Crim. Rep., 353, this court said: "The testimony (of other crimes) was admissible to refute appellant's contention that he was not in the neighborhood at the time the homicide was committed. In other words, it was admissible to identify appellant as being the guilty participant in this homicide." In Wyatt v. State, 55 Texas Crim. Rep., 73, this court held:

"Appellant further objects to the evidence being introduced of the other attempted robberies. The evidence fails to identify the appellant with that degree of conclusiveness necessary, or at least there is not a strong case made out of identification. This being true, it was proper for the court to permit the introduction of the attempted robberies since the evidence conclusively shows that whoever attempted the pre-

vious robberies did commit the robbery now under consideration. We have uniformly held that evidence which goes to show intent, or is part of the res gestae, or that serves to identify the defendant as the party who committed the crime, although said evidence may prove other and different crimes, that same is admissible for the purpose stated."

Appellant also contends that as he adduced evidence from his standpoint, tending to show that Greer and Marion Long had entered into a conspiracy to send him to the penitentiary, the court should have instructed the jury on this issue of defense. This would be no defense, for if they had entered into such conspiracy it would be no reason why appellant should be acquitted, if he in fact committed the crime. Testimony that they had entered into such conspiracy was admissible as affecting the credit of Greer and Long as witnesses; that the jury might take into consideration such fact in passing on the weight to be given the evidence of these gentlemen,—their motive in testifying as they did. Appellant cites those cases which correctly hold that the defenses of a defendant should be submitted to the jury. This is the law, but to show that a witness had a motive to swear falsely does not make a defense for defendant,—it simply weakens the testimony offered by the State. Appellant says we cited no authorities on this proposition, and challenges us to do so. We thought this so well established as to need no citation of authorities, but for appellant's benefit we will cite the cases of Rice v. State, 49 Texas Crim. Rep., 569, p. 585; Carter v. State, 39 Texas Crim. Rep., 345, and cases cited in sec. 810, White's Ann. C. C. P.

These are all the questions presented in appellant's motion for a rehearing and after again carefully studying the record, appellant's brief, and authorities cited, we are of the opinion that these questions and none of them present error, and the motion for rehearing is overruled.

*Overruled.*